Joseph S. Bryner, Burgess of the Borough of Connellsville, and others, Citizens and Taxpayers of said Borough, v. The Youghiogheny Bridge Company, Appellant.

*Equity—Preliminary injunction—Appeals.*

On an appeal from a preliminary injunction the Supreme Court will not discuss the merits of the controversy further than may be necessary in determining the propriety of an injunction at that stage of the case.

*Equity—Preliminary injunction—Bridge companies—Parties—Railroad grade crossings.*

The Supreme Court will not sustain a preliminary injunction against a bridge company where the want of authority in the company to build its bridge in the location and manner selected is not entirely clear, where it appears that the injury, if any, to the complainants is not different except in degree from that of the public in general, and where the location proposed will avoid a dangerous railroad crossing.

Argued March 9, 1899. Appeal, No. 101, Jan. T., 1899, by defendant, from decree of C. P. Fayette Co., No. 293, in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Bill in equity for an injunction, to restrain the construction of a bridge.

The facts were stated by KENNEDY, P. J., of the 5th judicial district, specially presiding, in an opinion on a motion to dissolve a preliminary injunction, as follows:

The purpose of this bill is to have the defendant enjoined or restrained from the construction of an abutment or approach on Main street, in the borough of Connellsville, to a new bridge proposed to be erected by it, the defendant, across the Youghiogheny

river, near the site of the present bridge owned and operated by it across the said river.

An act of the legislature of Pennsylvania, entitled " An act to authorize Isaac Meason and Zachariah Connell, their heirs and assigns, to erect, build and maintain a toll bridge over the Youghiogheny river at Connellsville, in Fayette county," was passed March 15, 1800.  By the first section of this act, the said Isaac Meason and Zachariah Connell, their heirs and assigns, were authorized " to erect, build, support and maintain a good and substantial bridge over and across the Youghiogheny river at Connellsville near where the Great Road leading from Philadelphia to Uniontown crosses said river, and that the property of said bridge when built shall be and the same is hereby vested in the aforesaid Isaac Meason and Zachariah Connell, their heirs and assigns, forever."    The first section thereof also containing the provision :  " That nothing in this act shall extend to authorize the said Isaac Meason and Zachariah Connell, their heirs and assigns, to erect or build a bridge in the manner in this act before mentioned on any private property without consent of the owner or owners thereof, or to erect the same in such manner as in any way to interrupt or injure the navigation of said river or the passage over the ford across the same near where said bridge may be erected."    Other provisions, conditions and restrictions appear in said act of assembly, which, however, are immaterial to this controversy.    The present Main street in the borough of Connellsville constitutes a part of the " Great Road" mentioned in this section, and is sixty feet in width, the driveway being thirty-six feet wide and the balance of said street being used as sidewalks.

In pursuance of the authority therein granted the grantees proceeded to erect and construct a bridge at Connellsville across the river, selecting the termini for the same at the bank of the river on either side thereof.

By an act of the same legislature entitled " A supplement to an act to authorize Isaac Meason and Zachariah Connell, their heirs and assigns, to erect, build and maintain a toll bridge across the Youghiogheny river at Connellsville, in Fayette county, passed March 15, 1800," approved April 17, A. D. 1861, the then owners of said bridge were granted a charter of incorporation under the name, style and title of the

Youghiogheny Bridge Company, and as such have continued to maintain and operate the bridge, at the point named, as constructed, from that date down to the present time.

On October 17, 1898, at a regular meeting of the council of the borough of Connellsville, being a municipal corporation, by resolution, accepted an agreement presented by the Youghiogheny Bridge Company, which provided among other things as follows: " That the said party of the first part (the borough of Connellsville), for the consideration hereinafter mentioned, hereby agrees to grant by ordinance duly enacted to the said Youghiogheny Bridge Company the right and privilege to erect, construct and maintain a bridge for the purpose of public travel in Main street in said borough, said bridge to be so constructed as to leave the said Main street at least eighteen feet in width from the southern curb as at present established to the said bridge, and bridge to occupy the remaining portion of said street, including the sidewalk on the northern side, and to extend east on said Main street no farther than 163 feet from the eastern curb on Water street as at present established." In consideration of which the Youghiogheny Bridge Company (this defendant) agreed to erect, construct and maintain the bridge in accordance with certain details and specifications mentioned in said agreement, and to give bond in the sum of fifty thousand dollars ($50,000) for the faithful performance of the covenants thereof. This agreement was signed by the president and secretary of the council of the said borough, and also by the president and secretary of the bridge company, and the bond in pursuance thereof was executed by the said bridge company, bearing date the same day, to wit: October 17, 1898. The necessity or materiality of said bond is not apparent, inasmuch as no obligation or liability was assumed thereby on the part of the bridge company, in addition to the covenants contained in the article of agreement.

The regular meetings of the council of said borough are held on the first and third Mondays of each month. The next meeting of said council, after that of October 17, 1898, should have occurred on November 7, 1898; no meeting, however, was held upon that day. A special meeting was held on November 10, 1898, the only notice of which given, as appears by the testimony, was by a policeman of the borough notifying verbally

such members as he saw, of the proposed meeting. It does not appear what members were even thus notified. At the meeting held on November 10, 1898, according to the minutes thereof, which have been offered in evidence, there was not a full attendance, at least two of the members of said council being absent. According to the same minutes, the following action was taken, in reference to the agreement with the bridge company:

"On motion of Mr. Hyatt, seconded by Mr. Bishop, that an ordinance be granted to the Youghiogheny Bridge Company. Motion carried."

This is all the action taken by the council, as appears by the minutes. It was testified to, however, that the ordinance marked exhibit "G" was passed at this meeting. The first section contains this provision: "Be it ordained by the authority of the town council of the borough of Connellsville, and it is hereby ordained by the authority of the same, that from and after the passage of this ordinance, the Youghiogheny Bridge Company shall have the right and privilege to erect, construct and maintain a bridge for the purpose of public travel in Main street in said borough, such bridge to be so constructed as to leave said Main street at least eighteen feet in width from the southern curb, as at present established, and to extend no further east on said street than a point one hundred and sixty-three (163) feet from the eastern curb of Water street as at present established." It is not necessary to mention here other provisions of this ordinance, as they are not material to this controversy.

It appears by the testimony that this ordinance was passed, as before stated, on November 10, and was presented to the burgess of the borough on or about November 15, by the clerk of council, when he promptly vetoed the same, giving his veto message to the clerk of council on or about November 17. .

The next regular meeting of council occurred on November 21, at which meeting the veto message was, constructively, at least, in possession of clerk of council. On that day, and prior to the meeting of council, the burgess called at the place of business of the clerk of council, and obtained from him his veto message, for the purpose of making some immaterial corrections in the wording or punctuation. He did not, however, withdraw his veto of the ordinance, but taking the paper, he made the unimportant correction, returned it to the clerk, as he, the burgess

states, on the same day, within half an hour after obtaining the paper from the clerk, placing it in the same place from which the clerk had taken it to hand to the burgess.

There is a conflict in the testimony as to the time the paper was returned to the clerk, he (the clerk) testifying that it was not returned on the same day that it was obtained by the burgess, but he says that he found it in the place from which he had taken it to hand to the burgess on the day following. This conflict does not seem to be very material, as the burgess did not withdraw his veto message, but only obtained the paper from the clerk for the purpose of making this immaterial correction therein. It was therefore in the possession of the proper officer of the council for the purpose of presentation to that body at its regular meeting of November 21. It does not seem to be the duty of the burgess to present in person the veto message to that body. His duty is performed when he presents it to the proper officer of council, the clerk in this instance, whose duty it should be to present it to council, at their next regular meeting. It appears from the testimony, however, that while not read at the meeting on November 21, the veto message was actually presented at the next regular meeting thereafter, which was held on December 5, 1898, at which meeting it was read, but no action taken thereon. Subsequently the clerk of council published the ordinance as having been passed on November 10, appending the note which appears at the foot of exhibit " G," signed by himself as clerk, stating that the burgess had not returned the ordinance together with his reasons for not approving the same, to the council, at its next regular meeting, after the ordinance had passed, and therefore it had become of full force and effect, as if signed and approved by the said burgess.

Water street in said borough runs parallel with the Youghiogheny river, near to the bank thereof, and almost at right angles to the bridge proposed to be constructed and to Main street. The terminus and approach to the bridge upon the Connellsville side, as heretofore constructed and maintained, is the bank of the river between the same and the western line of Water street. A large portion of Water street is occupied by the tracks of the Baltimore & Ohio Railroad Company, leaving about eighteen feet between the eastern line of said tracks and the eastern curb of Water street free for carriages, vehicles and

other travel over the same.    The proposed new bridge, if built, will have an overhead crossing of the tracks of the Baltimore & Ohio Railroad, being elevated upwards of twenty feet above the same, and after crossing Water street meets Main street, at a very great elevation above the present grade thereof, requiring the building of an abutment at its commencement near Water street, upwards of ten feet in height, and occupying with solid masonry the entire northern half of said Main street to a point 163 feet from the eastern curb line of Water street, at which point the approach of the bridge and the abutment so erected meets the present grade of Main street.    The abutment so to be built will occupy to the lot line or property of those abutting on Main street, entirely shutting off such abutting owners from access to Main street at its present grade, or as at present used.

One of the plaintiffs, Thomas R. T. Orth, is the owner of property on the southeast corner of Water and Main streets, and his property is therefore affected by the abutment or approach of the bridge so to be built.    Other plaintiffs in the bill are the owners of property on Water street, but none of them own property abutting on Main street, adjacent to the approach of the bridge.

It is not necessary to consider here further the details of the plans and specifications for the erection of the approach to the bridge, it being sufficient to state that the approach, with its abutment and columns or pillars, will occupy the whole northern half of said street from a point near Water street to a point 163 feet therefrom, and up to the property or lot line of those abutting on Main street, and thereby interfering with and preventing access and use of Main street as at present constituted.

The foregoing facts as stated are all admitted, or clearly established by the testimony, and are found as facts for the purpose of this case.

This bill was filed on January 5, 1899, and an ex parte preliminary injunction granted, which after a partial hearing had thereon January 6, 1899, was continued until further order. Subsequently, on January 11, the case came on for hearing, upon a motion to dissolve the preliminary injunction before granted, and upon motion of defendant's counsel to dismiss the bill.    At this hearing the burgess presented a paper asking leave to withdraw from the suit and to discontinue the same so far as

he was concerned, and at the same time filed another paper, in writing, stating that he had withdrawn his veto of the ordinance in question, and agreed that it should be of as full force and effect as if he had approved the same. This case must now be considered as if he were no longer a party plaintiff thereto. Testimony was taken at the hearing, showing in detail the plans and specifications for the building of the bridge, so far as the same are material to this controversy, and reciting also the his tory in reference to the alleged passage of the ordinance, exhibit "G," and proceedings in reference thereto.

The court continued the preliminary injunction theretofore awarded.

*Error assigned* was the above order of the court.

*Edward Campbell*, with him *P. S. Newmyer*, for appellant.— The borough council of Connellsville gave municipal consent to the work by the resolution of October 17, 1898. No ordinance was necessary: Draper v. Springport, 104 U. S. 501; Wiles v. Hoss, 114 Ind. 371; Fazende v. City of Houston, 34 Fed. Rep. 95; Fanning v. Gregoire, 16 How. (U. S.) 524; City of Alton v. Mulledy, 21 Ill. 76; Western Saving Fund Soc. v. Phila., 31 Pa. 175; Clark v. Corporation of Washington, 12 Wheat. 40; Hamilton v. Newcastle & Danville R. R. Co., 9 Ind. 359; Ross v. City of Madison, 1 Ind. 281; Bellmeyer v. Marshalltown, 44 Iowa, 564; Chattanooga v. Geiler, 13 Lea, 611; Wheeler v. Chicago, 24 Ill. 105; Moore v. City of New York, 73 N. Y. 238; Polk County Savings Bank v. State, 69 Iowa, 24; Scofield v. City of Council Bluffs, 68 Iowa, 695; Bucroft v. City of Council Bluffs, 63 Iowa, 646; Hight v. Munroe Co., 68 Ind. 576; Seibrecht v. New Orleans, 12 La. Ann. 496; Straus v. Ins. Co., 5 Ohio St. 59; Hayward v. Davidson, 41 Ind. 212; McCabe v. Fountain Co., 46 Ind. 380; Burnett v. Abbott, 51 Ind. 254; Gordon v. Dearborn Co., 52 Ind. 322; Jackson Co. v. Applewhite, 62 Ind. 464; Jennings Co. v. Verbarg, 63 Ind. 107.

The idea that the power of eminent domain, so far as necessary to render available and serviceable the grant of any corporate right to erect and maintain any toll bridge or highway, is not necessarily carried by the grant itself finds no support in

the law. The right of eminent domain is always carried by implication with every such corporate grant: Arnold v. Bridge Co., 1 Duvall, 372; Young v. Buckingham, 5 Ohio, 485; Plecker v. Rhodes, 30 Gratt. 795; Day v. Stetson, 8 Maine, 365; Young v. McKenzie, 3 Ga. 31; State v. Maine, 27 Conn. 641; Langdon v. City of New York, 93 N. Y. 129; Williams v. City of New York, 105 N. Y. 419; Monongahela Bridge Co. v. Kirk, 46 Pa. 129.

No new servitude would be imposed by the new structure upon other land for which Orth might maintain a bill until his damages had been paid or secured: Rafferty v. Central Traction Co., 147 Pa. 579; Trickett on Borough Law, 545, note 2.

· Passing ordinances in relation to the opening and improvement of streets is the exercise of legislative, not judicial, power : Wiggin v. Mayor, etc., of N. Y., 9 Paige, 16; Higginson v. Inhabitants of Nahant, 11 Allen, 530; Pitts., etc., Ry. Co. v. Point Bridge Co., 165 Pa. 37.

*R. F. Hopwood* and *D. M. Hertzog*, for appellees.—Plaintiffs are proper parties to maintain this bill: Penna. R. Co.'s App., 115 Pa. 514; Thomas v. Inter-County St. Ry. Co., 167 Pa. 120.

The company has no valid charter authorizing it to occupy Main and Water streets in the borough of Connellsville, with the abutments, etc., of their bridge: Philadelphia v. River Front R. R. Co., 173 Pa. 334; Case of The Phila. & Trenton R. R. Co., 6 Wharton, 25; Barker v. Hartman Steel Co., 129 Pa. 551; Com. v. Rush, 14 Pa. 186.

If the appellant company had valid legislative authority for its occupancy of said streets, the municipality, by valid and legal ordinance, has not given its consent to such company: Taylor Avenue Case, 146 Pa. 638; Lehigh Coal & Nav. Co. v. Inter-County·Street Ry. Co., 167 Pa. 126.

OPINION BY MR. JUSTICE MITCHELL, April 10, 1899:

This being an appeal from a preliminary injunction we follow the usual course, and do not discuss the merits of the controversy further than may be necessary in determining the propriety of an injunction at this stage of the case.

Two main questions are presented, first, the right of the bridge company, appellant, to build its bridge in the location and man-

ner selected, and secondly, the standing of the plaintiffs to question the appellant's action.

First. The original bridge was built under the authority of an Act of Assembly of March 15, 1800, 3 Sm. L. 436, 6 Carey & Bioren's Laws, 131, granting to two private citizens, Meason and Connell, the right to build a bridge across the Youghiogheny river. It appears that Meason and Connell were the owners of the land on both sides of the river at the proposed site, and the act directs that the bridge shall be located at Connellsville "near where the Great Road leading from Philadelphia to Uniontown crosses the said river," and expressly excludes any authority to occupy private property without the owner's consent, or to interrupt the navigation or the use of the ford across the river near where the bridge may be erected.

By the Act of April 17, 1861, P. L. 687, the then owners of the bridge, with their associates and successors, were incorporated as the Youghiogheny Bridge Company. It is claimed by the plaintiffs, and was so held by the court below, that the direction to build the bridge "near" the Great Road, which is now Main street in the borough of Connellsville, prevented its location "on" or "at" Main street, and that there is no power in the bridge company or the borough of Connellsville, or both combined, to relocate it as now proposed. On the other hand appellant claims that the original bridge has been rebuilt or replaced with some variation of site, twice before 1861 and once since, and that the power to so relocate must be necessarily implied from the destructibility of the bridge and the changes of the banks of the river by floods and by buildings and improvements following the course of population and travel. See, for illustration, Seabolt v. Commissioners, 187 Pa. 318. And appellant further claims that the act of 1861, having conferred upon it the franchises of a bridge company, must be held to have conferred all powers necessary to the accomplishment of its purposes, including eminent domain, at least to the extent requisite to enable it to make changes demanded by the business and the accommodation of the community.

We do not find it necessary to discuss these contentions at present further than to say that the want of authority in the appellant is not entirely clear. The facts have not been devel-

oped, and the rights of the parties may depend materially on them as they shall ultimately appear.

Secondly, as to the standing of the complainants. As originally filed, the bill was in behalf of the borough of Connellsville, inter alios, acting by its burgess, claiming that the ordinance giving consent to the proposed change in the approach to the bridge was not properly passed, and had been effectively vetoed. A large part of the attention of the court below was occupied with this part of the subject.

The borough having, in October, 1898, entered into a contract with the bridge company whereby, in consideration of a sum of money (subsequently paid to it) and certain stipulations as to the bridge, the tolls, etc., it agreed to grant, " by ordinance duly enacted," the right to locate and construct the bridge and its approaches in the manner proposed, it is not seen how it has any standing in a court of equity to set up its own failure to pass the ordinance, without at least showing a violation by the bridge company of some material obligation under the contract. But even this question has become immaterial. The objections of the burgess to the ordinance as passed having been obviated, he withdrew them, and with leave of the court formally discontinued the suit so far as he was party either individually or as the representative of the borough. Whether the borough's consent was by ordinance or by contract, was, therefore, unimportant, at least for the present controversy ; the material fact was the consent, and that is now undisputed.

The other parties complainant are property owners, and they of course must stand on their own rights.

The substantial effect of the change proposed is to elevate the Connellsville end and approach to the bridge so as to cross the tracks of the Baltimore & Ohio Railroad Company on Water street overhead instead of at grade, and in so doing to extend the approach to the bridge over the northern half of Main street eastward for a distance of 163 feet, where it would meet the present grade of the street, or, in other words, to divide Main street at that point so that its northern half shall ascend to the bridge, and the southern half descend to Water street as at present. Water street is not affected except by the pillars along the line of the curb supporting the approach to the bridge overhead.

One of the complainants, Orth, is the owner of land on the south side of Main street at the corner of Water. The effect of the change will be to reduce the width of the cartway of Main street in front of that property, from thirty-six to eighteen feet. None of the other complainants are owners of lots on Main street. It is clear that, while the other complainants may be incommoded by having access from Water street to the bridge made less convenient, and Mr. Orth additionally by having Main street narrowed in front of his lot, yet there is no evidence that the injury, if any, is different except in degree from that of the public in general, or that it cannot be fully compensated in damages. In such circumstances the only standing of private parties to enjoin the proposed action is on the ground that it is clearly and wholly beyond the powers of the defendant. Such is not the case here.

There is another potent reason why all doubtful questions must be resolved against an injunction. The proposed change is a public improvement in the direct line of the policy of the state to do away with grade crossings of railroads. The Connellsville end of the present bridge opens on Water street at grade with three tracks of the Baltimore & Ohio Railroad. The new bridge will cross all these overhead. The legislative policy is declared in the Act of June 19, 1871, P. L. 1360, giving the courts jurisdiction over the mode of the crossing of one railroad by another; in the Act of June 9, 1874, P. L. 282, authorizing counties, cities, towns and townships to enter into contracts with railroad companies to relocate, change or elevate their tracks in order to promote the security of life and property; in the Act of May 31, 1887, P. L. 275, allowing railroads, with the consent of the municipalities, to elevate or depress their tracks through cities ; and perhaps in other acts of similar import, and the courts have uniformly followed the legislative policy thus indicated. In Perry Co. R. R. Extension Co. v. Newport, etc., R. R. Co., 150 Pa. 193, referring to Pittsburg, etc., R. R. Co. v. S. W. Pa. Ry. Co., 77 Pa. 173, the Court said : "We will supplement the decision of that case by saying that the time for grade crossings in this state has passed. They ought not to be permitted except in case of imperious necessity." In Penna. R. Co. v. Electric Ry. Co., 152 Pa. 116, the act of 1871 was held to apply to street railways. And in

Scranton, etc., Traction Co. v. D. & H. Canal Co., 180 Pa. 636, 643, it was said by our Brother DEAN for the Court, that "after ample time for the most thorough consideration we are determined to adhere unflinchingly to the rule announced in Perry Co. R. R. Extension Co. v. Newport, etc., R. R. Co., 150 Pa. 193, and subsequent cases." The courts have not yet been invested with the same authority to regulate grade crossings of railroads over ordinary streets and highways, but the same considerations of safety to life and property, though in a less imperious degree, require the application of the same general policy, and where, as in the present case, the proposed change is for the purpose or with the effect of avoiding a dangerous crossing of that kind, equity will not enjoin it unless it be clearly and wholly without authority, and the injury therefrom to the parties complaining be substantial, irreparable, and not measurable in damages at law.

The injunction is dissolved. Costs to abide the final disposition of the suit.