Scranton & Pittston Traction Company v. the President, Managers and Company of the Delaware & Hudson Canal Company, Appellants.

The President, Managers and Company of the Delaware & Hudson Canal Company, Lessees, Appellants v. Lackawanna Street Railway Company and the Scranton & Pittston Traction Company, Lessees.

*Railroads—Street railways—Grade crossings—Act of June 19, 1871.*

Under section 2 of the Act of June 19, 1871, P. L. 1361, which provides "if in the judgment of such court it is reasonably practicable to avoid a grade-crossing, they shall by their process prevent a crossing at grade," the court, in deciding what is reasonable, is bound to keep in mind the consequences to be avoided, and to balance expense and difficulty against loss of life and limb.

Assuming that, under the act of June 19, 1871, the court may consider the question of cost in determining the reasonableness of a crossing, such consideration can have no weight where it appears that the additional expense of an overhead crossing would not be over six to eight thousand dollars.

The fact that an overhead structure on a highway imposes an additional servitude upon abutting property for which the owners may recover damages from a street railway company erecting such structure can have no weight with the courts in determining what is "reasonably practicable" as applied to a grade crossing under the act of June 19, 1871.

In determining what is "reasonably practicable," the only consideration of the court is the physical problem to be solved by the inference warranted from the character of the two roads, the business done upon them, the topography of the territory and like facts.

Argued Feb. 23, 1897.   Appeals, Nos. 430 and 431, Jan. T., 1896, by defendants, from decrees of Superior Court, affirming decrees of C. P. Lackawanna Co., Nov. T., 1894, Nos. 7 and 8, on bills in equity.   Before WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Bill in equity for an injunction.

The facts appear by the opinion of the Supreme Court.   See also Traction Co. v. Canal Co., 1 Pa. Superior Ct. 409.

The Superior Court affirmed the decree of the common pleas of Lackawanna county, dissolving a preliminary injunction which enjoined the plaintiff from constructing grade crossings over defendant's road.

*Error assigned* was decree dissolving injunction.

*W. H. Jessup* and *James H. Torrey*, with them *W. H. Jessup, Jr.*, for appellants.—The traction company has not the legal right under the street railway law to lay its tracks upon a public township road: Penna. R. Co. v. Montgomery County Pass. Ry., 167 Pa. 62.   The consent of the supervisors does not confer such right: Musser v. Fairmount & Arch St. Ry., 5 Clark, 466 ; Attorney General v. Ry. Co., 1 W. N. C. 489.   There was no valid consent of the township authorities : Western Penna. R. Co.'s App., 104 Pa. 399; Penna. R. Co. v. Mont. Co. Pass. Ry., 167 Pa. 62 ; Tamaqua & Lansford St. Ry. v. Inter-County St. Ry., 167 Pa. 91.   The railway company has a right to object to want of authority on the part of the traction company : Gtn. Pass. Ry. v. Citizens Pass. Ry., 151 Pa. 138.

There is no imperious necessity shown in the evidence that the crossing, if legal, should be at grade.

The law in reference to grade crossings applies to street railways : Perry County R. R. Extension Co. v. Newport & Sherman's Valley R. R., 150 Pa. 193; Penna. R. Co. v. Braddock Electric Ry., 152 Pa. 116 ; Hestonville, etc., R. R. v. Phila., 89 Pa. 210 ; Altoona & Philipsburg Connecting R. R. v. Tyrone & Clearfield R. R., 160 Pa. 623.

The act of 1889, permitting street railways to cross steam roads diagonally or transversely at grade is not constitutional.

*H. W. Palmer*, with him *Lemuel Amerman*, for appellees.—

Appellants have no right to object to the crossing: Penna. Schuylkill Valley R. R. v. Phila. & R. R. R., 160 Pa. 277; Penna. R. Co. v. Railway Co., 176 Pa. 560. Practically considered if a grade crossing is not allowed at the point in question the logical effect of the decision would be, if followed, to deny all such crossing in the future: Penna. R. Co. v. Electric Ry., 152 Pa. 116; Altoona, etc., R. R. v. R. R., 160 Pa. 624; Northern Cent. Ry. Co.'s App., 103 Pa. 621.

A court of equity will not, under the Act of June 19, 1871, P. L. 1361, decree the construction of an overhead crossing where the cost of such a crossing would be so great as to prevent the construction of the railroad: Penna. Schuyl. Valley R. R. v. Phila. & Reading R. R., 160 Pa. 277; Citizens Pass. Ry. v. East Harrisburg Pass. Ry., 164 Pa. 274; McCullough v. Manning, 132 Pa. 55; Kisor's App., 62 Pa. 428; Sproull's App., 71 Pa. 137.

OPINION BY MR. JUSTICE DEAN, April 19, 1897:

The Delaware and Hudson Canal Company, appellant, as lessee, operates a double track steam railroad between the cities of Scranton and Wilkes-Barre, on which are run about one hundred and thirty-five freight trains every twenty-four hours. Some of these trains are very long and heavy, not easily controlled or stopped when under headway. Besides the freight, many passenger trains are run daily. Switching engines, also, run frequently over these tracks. At Moosic, in Lackawanna township, the railroad has three tracks, and a fourth is being constructed. The Lackawanna Street Railway Company, incorporated under act of May 14, 1889, is authorized by its charter to build and operate an electric railway from a point on Center street at Scranton city line, along said street and the main road to Wyoming avenue in the village of Moosic, and thence along the avenue to the valley road through Marcy township to the borough of Avoca; thence, further, by Wyoming avenue, etc., accomplishing the circuit. The Scranton and Pittston Traction Company, organized under the general act of March 22, 1887, for incorporation of motor power companies, etc., contracted with the Lackawanna company to construct, complete and operate an electric railway over the route specified in the charter of the Lackawanna, and at once proceeded with

the work of construction. The public highway, along which by the charter of the Lackawanna it is authorized to be constructed, crosses the steam railroad at grade, at two points, one on Wyoming avenue in Moosic, and the other at Spring street, the two points being distant from each other on the steam railroad about half a mile. The constructing company, the appellee, attempted to lay the tracks of the electric railway at grade across the appellant's steam railroad at these points. The appellant objected and threatened to prevent the crossings by force; thereupon, the traction company filed its bill, alleging that any other than grade crossings at the points named were impracticable, and praying that the steam railroad company be enjoined from interfering with the construction, The steam railroad company also filed its bill against the traction company, averring that the proposed grade crossings would be highly dangerous, and that overhead crossings were palpably practicable without any great expense, and praying that the traction company be enjoined from crossing at grade. Preliminary injunctions were issued, and then a full hearing had before Judge GUNSTER, of the common pleas, on the merits, who, in an able opinion filed, enjoined the traction company from constructing grade crossings at either point. Subsequently, on additional evidence, he modified the decree, and dissolved the injunction as to the proposed crossing at Wyoming avenue, but leaving it stand as to Spring street. His principal reasons for modifying the decree as to the Wyoming avenue point, were: 1. The track of the steam road from the crossing is visible in one direction for nine hundred feet, in the other fifteen hundred feet, thus enabling the motorman of an approaching electric car to see an approaching steam train at a long distance, and thus avoid collision. 2. Evidence was given tending to show that an automatic switch could be adopted and controlled by the steam road which would render it impossible for an electric car to cross until the train had passed over. 3. An overhead crossing is impracticable, because the traction company, having no right of eminent domain, cannot build an overhead crossing against the objections of abutting property owners on the approaches to the crossing.

From this decree the Delaware & Hudson Canal Company took two appeals to the Superior Court,—one from the refusal of the court to enjoin the traction company from crossing

Wyoming avenue at grade, and the other from that part of the decree enjoining it from interfering with the construction of such grade crossing. The decree was affirmed by the Superior Court, two of the judges, in opinion filed, dissenting. On allowance by this court, we have two appeals by the steam railroad company from that decree.

So, in reviewing the decisions of the Superior Court and court of common pleas, we have for consideration only the questions raised by the appeals of the Delaware & Hudson Canal Company from that part of the decree authorizing a grade crossing at Wyoming avenue.

This brings us at once to a consideration of the duty of courts under the second section of the act of 1871: "If in the judgment of such court it is reasonably practicable to avoid a grade crossing, they shall, by their process, prevent a crossing at grade."

So far as the possible may be considered the practicable, there are very few points on the surface of the state where other than grade crossings are not practicable. What a century ago were deemed insurmountable obstacles to an under or over crossing are now treated only as engineering difficulties which skill and capital can generally overcome. But, the legislature has modified what might be deemed a strict definition of the word "practicable," by prefixing the word "reasonably." This devolves upon the courts in every contention of this kind an ascertainment from the facts of the particular case, what is "reasonable." In the first place we must assume, because the legislature in this enlightened age has impliedly so assumed, that it is unwise, if not reckless and barbarous, to unnecessarily subject the traveling public and the employees of carrying corporations to the death, maiming and horrors of collisions which inevitably result from grade crossings. And, if it be reasonably practicable to avoid a grade crossing, then the question as to what extent the risk of such a crossing may be reduced is immaterial, for the law assumes and experience demonstrates that extraordinary care by both parties using such crossing, aided by all the advances in science and mechanics, has only resulted in lessening the risk, not in abolishing it. In deciding, therefore, what is reasonable, we are bound to keep in mind the consequences to be avoided. It is not as if the result of a collision were the

injury to, or even the destruction of, property which, compared with rapid and cheap travel and transit, might perhaps be trivial; but it is the danger to the persons of the public which is to be avoided. Safety is the object in view, and, therefore, in determining what is reasonable, we must balance expense and difficulty against loss of life and limb.

Now, what are the facts relating to the Wyoming avenue crossing? The learned judge of the court below, in answer to appellant's eighth request for finding of facts, says that: "The topography of the country is such at the crossing in question, that an overhead crossing would not be more difficult at this point than at any other overhead crossing where the public road at the crossing was nearly level." That is, there is no physical obstacle to the avoidance of a grade crossing. As to the cost of avoiding it where it is physically practicable, it is not clear from the act itself that the legislature intended this fact should be considered in determining what is reasonable. It may be argued with much force that this is a question for the projectors of a new enterprise in determing whether they will proceed with it. The projected route, by reason of the topography of the territory, may render the road too expensive in grading; or, in the construction of crossings of steam roads so as to avoid danger to passengers, the expense may be so great that the project is not reasonably practicable; therefore, so far as cost is concerned, it is a question for the corporation to determine before attempting construction at all, what is reasonably practicable, and not for the courts to decide, on a comparison of the amount of the company's capital with the estimated cost of avoiding a proposed highly dangerous grade crossing. But, assuming the question of cost may properly enter into the question of reasonableness, it can have no weight here, for it is conceded that the additional expense of an overhead crossing would not be over six to eight thousand dollars, a sum not equal to the cost of one mile of additional track; an amount which, balanced against the loss of a single limb to a passenger, is of no weight at all.

The practicability of the overhead crossing being thus established, and the expense being but light when compared with the danger to be avoided, it is clearly reasonably practicable, unless there be some other fact in the case which should impel us to

an opposite conclusion. In both the common pleas and the Superior Court such fact is assumed to exist, and it prompts the decree in favor of the traction company.

It appears the approaches for a reasonably practicable overhead crossing will be elevated for some distance on each side above the level of the street on which property owners have constructed their buildings; the owners allege that such elevated structure on the highway imposes an additional servitude upon their property, and they will not consent thereto; the traction company, not having the right of eminent domain under the acts of 1887 and 1889, cannot, on payment of damages, proceed with the construction in the absence of consent. But, it seems clear to us, this fact can have no weight in determining what is reasonably practicable, as applied to a grade crossing under the act of 1871. The traction company in effect says, we have no power under our charter to construct a reasonably practicable overhead crossing as required by law, therefore, as to us, a crossing, except at grade, is impracticable. But the reasonably practicable is not to be determined by want of corporate power to invade the rights of the property-owner. The construction of the crossing is what the statute expressly says shall be regulated by the courts, and this, with a view to avoid danger and protect the older franchise from injury by the younger one. The act of 1889 gives the right to cross at grade, but then we are met by the act of 1871 which says the court shall, by its process, prevent it, if an overhead crossing be reasonably practicable. This leaves only for the court the physical problem to be solved by the inference warranted from the character of the two roads, the business done upon them, the topography of the territory, and like facts. To go outside of this class and determine the reasonable practicability of a grade crossing, because of the absence of corporate power to invade private rights, would necessarily lead us to authorize a disregard of the act of 1871, or into supplying in the act of 1889 a power which the legislature has not granted. The commonwealth has given to electric railway companies the right to lay their rails on the streets and highways, with the consent of the municipal authorities; and, impliedly, power to injure private property along such highways with the consent of the owners; for while the statute as to the last named is silent, the constitution is very expressive. But if

the consent of either be denied, we can neither authorize the companies to disregard the law, nor supply a power which, as yet, they have not.    We are of the opinion the Superior Court and the court below erred in importing into and determining the issue by a wholly irrelevant fact.

We may say here that if the act of 1889 does not confer upon electric railway companies those full powers necessary to their construction and corporate prosperity, the legislature is the body to which application should be made for more extensive grants. And we may further say that, after ample time for the most thorough consideration, we are determined to unflinchingly adhere to the rule announced in Perry County Railroad v. Newport, etc., Railroad, 150 Pa. 193; Penna. R. Co. v. Braddock Electric Ry. Co., 152 Pa. 116, and subsequent cases.

Our conclusion on this question relieves us from the consideration of the many others raised by the numerous assignments of error.    That part of the decree of the common pleas and the Superior Court, vacating the injunction as to the Wyoming avenue crossing, and authorizing at that point a grade crossing, is reversed, and it is now ordered that the Scranton & Pittston Traction Company, its officers, agents, servants and successors be and hereby are perpetually enjoined from constructing or operating at grade a crossing over the roadbed of the appellants described in the bill, answer and decree as the Wyoming avenue crossing.    It is further ordered that appellee, the Scranton & Pittston Traction Company, pay the costs of these proceedings. As to so much of the said decrees as enjoin the said Scranton & Pittston Traction Company from constructing and operating a grade crossing at Spring street, and directs that said crossing shall be under the roadbed of the Delaware & Hudson Canal Company, etc., the same is affirmed.