# Pittsburg Junction Railroad Company, Appellant, *v.* Fort Pitt Street Passenger Railway Company.

*Railroads — Street railways — Crossings — Acts of June* 19, 1871, *and May* 14, 1889.

The Act of June 19, 1871, P. L. 1360, relating to grade crossings, applies to street railways, and is not affected by the Act of May 14, 1889, P. L. 211.

The courts will liberally construe and rigidly enforce the provisions of the act of June 19, 1871, relating to grade crossings, whenever cases fairly within its letter and spirit are presented.

A grade crossing will not be authorized where the topography of the neighborhood, the surroundings of the crossing and the extent to which the crossing is used and will probably be used establish beyond a doubt the conclusion that it is exceptionally dangerous.

The fact that there are other grade crossings in the same city, over which more trains pass than over the crossing in question, is no argument in favor of sanctioning another grade crossing of a dangerous character.

In a controversy between a railroad company and a street railway company as to a crossing, the fact that the railroad company has been using the street without authority for the purpose of shifting its cars cannot be taken into consideration in determining whether a grade crossing shall be permitted or not.

In order to avoid a grade crossing, a street railway company has the right to " diverge for a short distance " from its route.

In a suit in equity under the act of June 19, 1871, to regulate the crossing of a railroad by a street railway, no stay of the preliminary injunction

should be granted, except upon the condition that precautionary rules and regulations, not less efficient than those embodied in the decree, be faithfully and rigidly observed and enforced, in the meantime.

Argued Nov. 2, 1897. Appeal, No. 153, Oct. T., 1897, by plaintiff, from decree of C. P. No. 1, Allegheny Co., Dec. T., 1895, No. 649, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity to regulate a crossing.

The facts appear by the opinion of SLAGLE, J., which was as follows:

The bill in this case was filed for the purpose of preventing the defendant company constructing its line of street railway along Liberty avenue, in the city of Pittsburg, across the tracks of plaintiff on Thirty-third street.

All the cases arising since the Act of June 19, 1871, P. L. 1360, Purd. Dig. 78, pl. 34, have recognized the duty of the courts to enforce the provisions of the act, that if it is reasonably practicable to avoid a grade crossing they shall by their process prevent a crossing at grade. And by the case of the Pennsylvania Railroad Co. v. Braddock Electric Railroad Co., 152 Pa. 116, it was held that the duty is not affected by the Act of May 14, 1889, P. L. 211, Purd. Dig. 1827, pl. 256, and further that the act of 1871 applies to street railways. It follows, then, that the only question in this case is whether or not it is reasonably practicable to avoid a grade crossing, it being admitted that the defendant company has a right to cross plaintiff's line. What would be reasonable in any particular case depends upon the degree of danger and the cost and difficulties of avoiding it. The evidence in this case shows that the Junction Railroad is the connecting link between the Baltimore & Ohio system on the Monongahela river and its system on the Allegheny river; that it crosses underneath the Pennsylvania about 1,300 feet south of Liberty avenue, and approaches it on a down grade of about seventy-one feet to the mile, with a curve a short distance from Liberty avenue, which it crosses at grade; that the present traffic of the road consists of about twenty-five trains each day, four of which are passenger trains,

and that its yards are on and near Liberty avenue, the switches to which are so arranged that the shifting engines cross it frequently on an average of every ten or fifteen minutes. Its trains are very heavy, consisting of from forty to fifty loaded cars and ninety to 100 empty.

We may say here that we give no consideration to the shifting of the cars. This company has no right to use the street as a shifting ground, and without regard to the use of the street by the street railway company, it should be discontinued as an unwarrantable interference with the rights of, and a menace to, the safety of persons using it for ordinary travel, and the dangers from the handling of heavy trains is entirely within the control of the plaintiff, who should not undertake to do that which by their own showing is dangerous.

Liberty avenue, along which the street railway is constructed westward from Thirty-third street, is almost level and straight for about one mile. East of Thirty-third street it is about level for fifty feet and then rises at a grade of five and five tenths feet for some distance, and is straight for several hundred feet, when it curves to the south. Going eastward there is no greater danger than upon any crossing; going westward there is the added danger of approaching the railroad on a down grade. During the busy hours of the morning and afternoon, about two hours each, it is expected that cars will pass every minute and a half. There are a number of grade crossings in Pittsburg and Allegheny, over most of which more trains pass than along the Junction road, and on streets along which more passenger cars are carried, as for instance, on Penn avenue, on the P. F. W. & C., at Eleventh street, and the Allegheny Valley at Twenty-eighth street, and on Liberty street at the Union depot, on Second avenue over the Panhandle tracks, on Federal, Sandusky and Anderson streets, Allegheny, over the P. F. W. & C., and West Penn, etc. The crossing on Federal street has a grade very similar to that on Liberty Avenue east of Thirty-third street. The accidents to street cars at these crossings have been few.

The means of avoiding this crossing as suggested are as follows:

1. By making a detour by way of Thirty-second street to Penn avenue; thence along the tracks of the Citizens P. R. R. to Thirty-fourth and along Thirty-fourth to Liberty.

2. By a detour on Thirty-second street to Spring alley; thence by Spring alley to ———— street and thence to Liberty.

3. By an overhead way constructed in Liberty avenue, of which four plans were presented, costing $17,000, $20,000, $23,000 and $61,000, respectively, 650 and 950 feet in length, at a grade of eight and one tenth and five and five tenths respectively.

The testimony shows that the curves on the first plan would be impracticable unless the tracks were curved across the tracks of the Citizens' road; that the grade on Penn avenue rises at Thirty-fourth street, and the grade of Thirty-fourth street is over nine per cent. This would make a much more dangerous crossing than the one proposed, for the reason that the cars of both roads would approach each other upon a heavy down grade and those of the Fort Pitt Company come out of Thirty-fourth street on to Penn avenue upon a curve. If such an arrangement were proposed it would be the duty of the court to prevent it.

The testimony shows that the Spring alley route could not be used without the purchase of private property for making curves. As the company has no power to condemn property, it is not within its power to do so, except at the will of parties whom the court cannot control. But aside from this, the grade is nearly ten per cent, and there is room for only one track unless the entire street is occupied. This is in no sense a reasonably practicable route.

In considering the third plan, the cost is not the only consideration. It contemplates the erection in the street of a bridge or viaduct sixteen to twenty feet in width, and more than twenty feet high. The railway company has no right to change the street in this way, without consent of councils, if, indeed, councils have the right to grant such a privilege. It would certainly damage the adjoining property. The only witness called upon this point estimated the damage at a sum over $100,000. We think this estimate extravagant, but it would certainly be very large. It was suggested that the railway company would not be liable to pay these damages, but whether they would or not, some one would suffer to that extent, and in this matter the railroad companies are not alone to be considered, but the public and every individual who may be affected by our order.

After a full consideration of all the facts and circumstances

of the case, the damages and the cost and difficulties in the way, in our judgment, it is not reasonably practicable to avoid a grade crossing.

There is no sufficient evidence as to the kind of crossing which should be adopted. The parties may probably agree as to this. If so, the decree may be prepared. If they cannot agree a further hearing must be had.

The court subsequently entered the following decree :

And now, to wit: this the 28th day of August, A. D. 1897, in accordance with the opinion of the court heretofore filed herein on the 10th day of March, 1896, it is now ordered, adjudged and decreed that the Fort Pitt Street Passenger Railway Company, defendant, has the lawful right to cross at grade the tracks of the Pittsburg Junction Railway Company, complainant, upon Liberty avenue and Thirty-third street in the city of Pittsburg, Pennsylvania, but said crossing shall be made subject to the following terms and conditions, to wit:

1. Said crossing shall be constructed according to the design known as " Pennsylvania Railroad Company's Standard," consisting of a main rail, a lift rail and a guard or loop rail for each rail of each track of the Pittsburg Junction Railroad, and a main rail and guard rail for each rail of the tracks of the Fort Pitt Passenger Railway Company. All rails shall be fished or fastened together by re-enforced splice bars ; the main rail and lift rail to be separated by rolled steel fillers ; splice bars, rails and fillers to be held together by one and one-fourth inch bolts, three bolts to each leg of each splice bar. Under the intersection of the rails, forming the tracks of both of said companies, there shall be placed a steel plate three fourths of an inch thick, to be riveted to the rails through the base, said rivets to be countersunk rivets on the underside, leaving bottom of plates smooth, and said plates shall be punched to receive spikes. Combination splice bars shall be furnished to properly fish the existing rails of the Pittsburg Junction Railroad and the section of rails used in said crossing frogs. The heads of the outer or southwesterly rails of the west and eastbound tracks of said Pittsburg Junction Railroad shall have an elevation of two and one half inches and two and one fourth inches respectively, but should the business of said Pittsburg Junction Railroad Company in the future increase to such an extent as to require said above mentioned

rails to have a higher elevation for the proper and safe operation of said railroad, the said Pittsburg Junction Railroad Company shall have the right to take up said question with said Fort Pitt Street Passenger Railway Company, and in the event of the failure of said parties to agree upon such elevation, to have the same fixed by a further decree of this court. Said railroad company's rails shall be grooved through the head not greater than one inch wide by not less than eleven sixteenths of an inch deep for the flanges of the street railway company's car wheels to pass over said railroad company's rails, said crossing to be constructed substantially as shown (designating plan).

2. Construction of foundation for crossing frogs: crossing frogs are to be placed on white oak stringers sixteen inches wide by twelve inches thick, which shall be framed together to extend not less than fifteen inches beyond the ends of the rails forming the crossing frogs, and shall be united together by one inch tie rods placed not more than four feet apart. Said stringers shall be placed on broken stone foundations not less than twelve inches thick and the space between said stringers shall be filled with broken stone up to within seven inches of the top of rail, the whole to be thoroughly tamped and rammed.

3. Each of the trolley and feed wires of the Fort Pitt Street Passenger Railway Company crossing the tracks of the Pittsburg Junction Railway Company shall be maintained at an average clear height of twenty-two feet above the top of the rails of the respective track over which said feed trolley wire shall pass. The arms of the safety gates of the Pittsburg Junction Railroad Company on the north side of Liberty avenue to be shortened and on the south side of said avenue to be lengthened so as to clear the trolley wires of said street railway company.

4. The entire cost and expense of the original construction of said crossing as above specified, as well also the maintenance, repair or renewal of the same, or any part thereof, shall be paid by the Fort Pitt Street Passenger Railway Company, and all of said works shall be done under the approval and supervision of the chief engineer of the Pittsburg Junction Railroad Company. Should the said crossing at any time, in the opinion of the chief engineer of said Pittsburg Junction Railroad Company, become dangerous to the safe passage of trains, the said Street

Passenger Railway Company shall proceed at once to make all necessary repairs or renewals so as to make a safe crossing, upon notice of said chief engineer as to what repairs he deems necessary to be made on said crossing. In case said street railway company shall desire to make any changes or repairs to said crossing, excepting such changes or repairs which must be without delay, the said street railway company shall give to the said railroad company one week's notice in writing of the desire and intention of said street railway company to make such repairs or changes in said crossing.

5. The trains, locomotives and cars of the Pittsburg Junction Railroad Company shall have the prior right of passage over said crossing. The west or city bound cars of the Fort Pitt Street Passenger Railway Company, upon approaching said crossing, shall stop twice, the first time at a point 200 feet distant easterly from said crossing, and from that point shall then proceed down the hill leading to said crossing, under full control, stopping the second time at a point within fifty feet of said crossing. The east, or East Liberty bound cars, shall stop once upon approaching said crossing, at a point thirty feet westerly from said crossing. Said cars of said street passenger railway company shall be operated by at least two men, a motorman and a conductor, and upon making the said stops nearest to said crossing the conductor shall leave his car and walk forward to and upon said crossing and look carefully for the approach of trains, locomotives and cars upon the Pittsburg Junction Railroad. When he has ascertained that no such train, locomotive or car upon said Pittsburg Junction Railroad is sufficiently near to said crossing to endanger the car in his charge, then the conductor shall signal his car to pass over said crossing, and he shall remain standing upon said crossing until his said car shall have passed entirely over said crossing. Should a car become disabled upon said crossing, such conductor shall at once give all necessary warning and notice to the employees of the Pittsburg Junction Railroad Company in charge of said crossing and in charge of the trains, locomotives and cars of said Pittsburg Junction Railroad, so as to prevent any collision of such cars, trains or locomotives with the disabled car upon said crossing.

*Error assigned* was the decree of the court.

*Johns McCleave*, for appellant, cited Traction Co. v. Canal Co., 180 Pa. 640; Penna. R. Co. v. Street Ry. Co., 176 Pa. 559; Rahn Twp. v. Ry. Co., 167 Pa. 84.

*George C. Wilson*, with him *William D. Evans*, for appellee, cited Lockhart v. Craig St. Ry. Co., 139 Pa. 419.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 24, 1899:

This appeal involves the question whether it is reasonably practicable to avoid a grade crossing of the plaintiff company's road by the defendant company's railway at the intersection of Liberty avenue and Twenty-third street in the city of Pittsburg.

The Act of June 19, 1871, P. L. 1360, conferring equitable jurisdiction on certain courts of this commonwealth, as to railroad crossings in the second section thereof declares : " If in the judgment of such court it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade." In all the cases under this act that have been brought into this Court its deliverances have emphasized, not only the necessity, but especially the duty of said courts to enforce its provisions. In Pennsylvania Railroad Co. v. Braddock Electric Co., 152 Pa. 116, it was held that this duty is not affected by the Act of May 14, 1889, P. L. 211, and also that the act of 1871 applies to street railways. Nor are said duty and necessity in anywise lessened by lapse of time. On the contrary, as population, travel and traffic increase from year to year, grade crossings become more and more dangerous to both life and property, and consequently the necessity of avoiding or prohibiting them becomes more imperative. This is evidenced by the large expenditures that have been recently made, and are now in progress in some of the larger centers of population, for the purpose of correcting mistakes that have been made in past years by permitting the construction of grade crossings. The city of Philadelphia and the Reading Railroad Company are now about completing a subway for the use of said road at a joint expense of not less than $6,000,000. The time has not yet come for any retrograde movement in the work of preventing and avoiding grade crossings either in cities, towns or coun-

try. In Altoona, etc., Railroad Co. v. Tyrone, etc., R. R. Co., 160 Pa. 643, we said: "The necessity which nearly a quarter of a century ago moved the legislature to enjoin these duties on the courts is now greater than ever; and in several cases, among which are Perry Co. R. R. Co. v. N. & S. V. R. R. Co., 150 Pa. 193, and Penna. R. R. Co. v. Electric Ry. Co., 152 Pa. 126, we have had occasion to emphasize the importance of the ever increasing and now almost imperative necessity of prohibiting grade crossings. That constantly growing necessity has more than kept pace with the rapid multiplication of railroads and urgent demands for high rate of speed, few stoppages, etc. But it is unnecessary to enlarge on the many considerations that are opposed to grade crossings, and the comparatively few that can be even plausibly urged in their favor."

In the case last cited it is said: "The manifest purpose of this is not merely to discourage grade crossings because of their danger to the public, as well as injury to the company whose road is crossed, but also to prevent them whenever in the judgment of the court it is reasonably practicable. . . . As an exercise of the police power of the state, the wisdom of the provision has become more manifest from year to year as railroads multiply." In Traction Co. v. D. & H. Canal Co., 180 Pa. 643, will be found an elaborate discussion of the act of 1871, by our Brother DEAN, wherein the words "reasonably practicable" are construed, and the wisdom of rigidly enforcing the provisions of the act is clearly and forcibly presented. In that connection it is said, inter alia: "That it is unwise, if not reckless and barbarous, to unnecessarily subject the traveling public and the employees of carrying companies to the death, maiming and horrors of collision which inevitably result from grade crossings."

These references, to which many more might be added, are quite sufficient to indicate the settled conviction of this Court as to the wisdom and necessity of liberally construing and rigidly enforcing the provisions of the act, whenever cases fairly within its letter and spirit are presented.

Without referring in detail to the evidence tending to show the dangerous character of the crossing, or reciting the facts found by the court below, it is quite sufficient to say that the undisputed evidence, as to the topography of the neighbor-

hood and surroundings of the crossing, the extent to which the latter is used by both companies, etc., establishes beyond doubt the general conclusion that it is exceptionally dangerous; and it is equally clear that the natural growth of the city and consequent increase of travel and traffic on Liberty avenue and over the Junction railroad, will necessarily render the crossing more and more dangerous every year. These conclusions of fact are not seriously questioned and may be accepted as correct.

The facts referred to by the learned judge, "That there are a number of grade crossings in Pittsburg and Allegheny over most of which more trains pass than along the Junction road, and on streets along which more passenger cars are carried," etc., are surely no argument in favor of sanctioning the maintenance of additional death traps. The dangerous character of the crossings referred to will, doubtless, sooner or later, necessitate their avoidance in some legitimate way. Their discontinuance is only a question of time.

In considering the elements of danger necessarily involved in the crossing, the fact that plaintiff company has been using the street for the purpose of shifting its cars was properly eliminated by the learned trial judge. He was quite right in saying : " This company has no right to use the street as a shifting ground, and without regard to the use of the street by the street railway company it should be discontinued as an unwarrantable interference with the rights, and a menace to the safety, of persons using it for ordinary travel, and the dangers from handling of heavy trains is entirely within the control of the plaintiff, who should not undertake to do that which by their own showing is dangerous."

The general conclusion on which the learned judge based his refusal to prohibit a crossing at grade, is recited in the fifth specification as follows: " After a full consideration of all the facts and circumstances of the case, the damages and the costs and difficulties in the way, in our judgment it is not reasonably practicable to avoid a grade crossing."

This presents the cardinal question in the case, to which all others are necessarily subordinate. If that conclusion was warranted by all the facts and circumstances shown by the evidence, the court was right in refusing to use its " process to prevent a

crossing at grade," and in directing its attention to the adoption of such rules and regulations as will best protect persons and property from injury at the point in question. If not, the decree must be reversed and the injunction prayed for should be granted.

Assuming, for argument sake merely, that the above quoted conclusion of fact is correct, and that the only measure of reasonably practicable relief consists in the enforcement of such precautionary rules and regulations as are best calculated to lessen the perils of the grade crossings, etc., we are not prepared to say that the rules and regulations embodied in the decree are open to much, if any, adverse criticism; but our consideration of all the facts and circumstances bearing on the main question has convinced us that it is reasonably practicable to avoid a crossing at grade, and that the court below should have so held. We have reached this conclusion only after carefully considering and weighing all the evidence relating to the location, the surroundings and admittedly dangerous character of the crossing, etc., including the testimony relating to the practicability of avoiding the crossing at grade, etc. This inference of fact might perhaps be fortified by a detailed review and discussion of the testimony, but such elaboration of the minor questions in the case is deemed unnecessary. The learned judge of the common pleas appears to have attached undue importance to the estimated cost of constructing an overhead crossing, or otherwise avoiding the crossing at grade, including damages to adjacent property, etc. As is usual in such cases the witnesses differ widely in their estimates, etc., but neither of their estimates is so high that it should be placed in the scale against the menacing dangers of perpetuating such a crossing. The parties to this proceeding and the city of Pittsburg, representing the inhabitants thereof, are so specially interested in avoiding the dangerous grade crossing in question, that it would seem to be the part of wisdom for them to co-operate and each contribute a just and reasonable proportion of the expenses necessary to make its abolition an accomplished fact.

Having determined that it is reasonably practicable, to avoid the crossing in question, it is neither necessary nor proper for us now to express any opinion as to the manner in which it should be done. That is a question for the parties litigant and

the municipal authorities of the city, who represent the public, to consider and act upon without further delay. As was said in Traction Co. v. Canal Co., 180 Pa. 641, the cost of a legal and proper construction of its road was for the company to consider in the selection of its charter route. This Court has held that "in order to avoid discomfort or danger to the traveling public," a street railway company has a right to "diverge for a short distance" from its route, etc.: Rahn Twp. v. Ry. Co., 167 Pa. 84; "and it may also be added, to avoid grade crossings or for any other reason amounting to necessity, or what is the same thing in such matters, great public convenience :" 176 Pa. 559.

It may be that a reasonable stay of the injunction would not be improper, but in the absence of sufficient evidence on that subject, that question may be considered and acted on by the court below; but no stay should be granted except upon the condition that precautionary rules and regulations not less efficient than those embodied in the decree be faithfully and rigidly observed and enforced, in the meantime.

Decree reversed and set aside at defendant's costs, and it is now considered and adjudged that it is reasonably practicable to avoid the grade crossing in question, and it is accordingly ordered that the injunction as prayed for be granted; and it is further ordered that the record be remitted to the court below with instructions to proceed in accordance with the foregoing opinion.