# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Pittsburg & Lake Erie Railroad Company v. Lawrence County.

*Bridges—County bridges—County commissioners.*

The authority of county commissioners to build a county bridge is derived from statutes, and the steps prescribed for this purpose must be pursued with at least reasonable strictness and diligence.

*Bridges—County bridges—Record—Act of June* 13, 1836, *P. L.* 560, *sec.* 35.

Under the act of June 13, 1836, the approval of a bridge as a county bridge by the county commissioners must be entered of record in the quarter sessions. The proper practice is for the commissioners to pass a resolution formally expressing their concurrence in the view that the bridge is necessary and too expensive for the townships, and to file a copy of such resolution in the quarter sessions, the record of which will then show a complete proceeding carrying authority to build. This course is, however, not indispensable in the first instance. If it should become important at any time, a copy of the resolution or even a minute of less formal action by the commissioners could no doubt be allowed by the court to be filed nunc pro tunc to complete its record.

Where viewers report in favor of a county bridge, and their report is approved by the grand jury and is confirmed by the court, but no attempt is made to enter of record the approval of the county commissioners for a period of seven and one half years, and then the approval is entered in a proceeding where the bridge had been disapproved by the grand jury, the proceedings are too grossly irregular and defective to be sustained, and will be quashed upon motion of any party having an interest to give him standing.

VOL. CXCVIII—1

(1)

*Bridges—County bridges—Irregularity of proceedings—Railroads—*
*Grade crossings—Parties—Act of June 19, 1871.*

It is the settled policy of the state of Pennsylvania as administered by
the Supreme Court, that wherever the subject comes within its jurisdic-
tion and control, no grade crossing of a railroad over another railroad or
a common highway will be permitted, except in case of manifest and un-
avoidable necessity.

The Supreme Court will recognize the standing of a railroad company
to object to the construction of a county bridge, where the proceedings to
authorize the construction of the bridge are grossly irregular, if it appears
that the building of the bridge in the manner proposed will necessitate a
grade crossing.

Argued Oct. 17, 1900. Appeal, No. 4, Oct. T., 1900, by
plaintiff, from decree of C. P. Lawrence Co., Sept., 1899, No. 3,
on bill in equity in case of Pittsburg & Lake Erie Railroad Com-
pany.v. The County of Lawrence et al. Before McCOLLUM,
C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ.
Reversed.

Bill in equity for an injunction to restrain the construction
of a county bridge.

From the record it appeared that the bridge in question was
intended to be built over the Beaver river at Newport. The
complainant alleged that the proceeding authorizing the con-
struction of the bridge was grossly irregular. The nature of
these proceedings are stated at length in the opinion of the
Supreme Court. The court in an opinion by WALLACE, P. J.,
dismissed the bill.

*Error assigned* was the decree dismissing the bill.

*D. B. Kurtz*, with him *L. T. Kurtz*, for appellant.—In all
cases where a remedy is provided, or duty enjoined, or anything
directed to be done by any act or acts of assembly of this com-
monwealth, the directions of said acts shall be strictly pursued:
Com. v. McGowan, 2 Parsons' Select Eq. Cases, 347; McKin-
ney v. Monongahela Nav. Co., 14 Pa. 65; Vandermark v. Phil-
lips, 116 Pa. 199.

The law designs that the court, grand jury and county com-
missioners shall be check on each other, as to expenditure of
public moneys in erecting public bridges—that all must concur

before it can be entered on record as a county bridge ; and all this must appear of record.   It cannot be left open until some subsequent board of commissioners may be induced to approve it : Pequea Creek Bridge, 68 Pa. 427 ; Youghiogheny Bridge Co.'s App., 168 Pa. 454 ; In re Road in Salem Twp., 103 Pa. 250 ; Allegheny Ave., Trust Co.'s App., 3 Pa. Superior Ct. 387 ; In re Knox Street, 12 Pa. Superior Ct. 534.

The evidence shows that the acts complained of in this case are and will be injurious to the plaintiff, and will endanger public safety.

*Wylie McCaslin,* county solicitor with him *J. Norman Martin,* for appellee.—Even if the commissioners have failed to comply with some of the preliminaries, equity will not enjoin, even at the suit of a taxpayer : Beach on Injunctions, sec. 1294.

Where nothing more than irregularities or error in the proceedings appear, an injunction will not be awarded unless it is applied for before the work has been done, and even then the writ will not issue, if the errors are not of a material nature : Elliott on Roads and Streets, 442.

The contention of appellant that the viewers could not locate the bridge at any other point than that given in the petition is without support and contrary to the decisions of this court : Conestoga Bridge, 150 Pa. 541 ; Delaware County's App., 119 Pa. 159.

The county may lawfully build a bridge or any portions thereof, without entering such bridge on record as a county bridge : Act of May 25, 1887, P. L. 267.

OPINION BY MR. JUSTICE MITCHELL, January 7, 1901 :

The authority of county commissioners to build a county bridge is derived from statutes, and the steps prescribed for this purpose must be pursued with at least reasonable strictness and diligence.   The proceedings in the present case are irremediably defective in both respects.   Applications were made to the quarter sessions for a county bridge at or near the location now in controversy, and proceedings were had thereon as found and reported by the court below as follows :

At January sessions, 1883, the viewers reported that the bridge was not necessary.

At April sessions, 1883, the viewers reported in favor of the bridge, but the grand jury disapproved it.

. . At January sessions, 1884, the viewers reported in favor of a bridge at the old ferry on the site of a former view, but the grand jury did not approve it.

At June sessions, 1889, the viewers reported in favor of a bridge, but the grand jury disapproved it.

At March sessions, 1891, the viewers reported the bridge necessary, but did not locate the site thereof as set forth in the petition because " there is no good location near the points specified in petition."

At June sessions, 1891, on a petition for a bridge where the public highway from Newport to Hardscrabble crosses the river; at what is known or was formerly known as the Van Eman Ferry, the viewers reported that " the bridge proposed in the petition and order to view is necessary . . . . and did locate the site thereof, but the site is not at the place named in the petition, where a public road crossed the same, but is about one sixth of a mile further down the river where no public road crosses the same."

This report was approved by the grand jury September 10, 1891, and was confirmed by the court, September 19, 1891.

How far this last petition was connected with the preceding ones, or was a new start, does not clearly appear, nor is it now material to inquire. We may treat it as a movement de novo, and the previous ones as bearing on it only as collateral evidence that the proposed action did not command ready assent from the necessary authorities, and therefore called for careful observance of all the prescribed statutory steps. No further step was taken for seven years and a half until January, 1899, when the county commissioners then in office, without any official approval of the necessity of the bridge or determination that the expense of it would be too great for the townships to bear, and without entering it on record anywhere as a county bridge, made a contract with the Pittsburg Bridge Company, one of the defendants, to build the bridge now in controversy. The attention of the commissioners being apparently called to this omission, they subsequently entered on their minutes that " on motion it was agreed that the commissioners for the county build a bridge over the Beaver river at Newport as prayed for

at No. 4, June term, 1889," and authorized the contract with the bridge company.   Even this belated approval, however, did not get through without an additional defect.   The bridge reported by the viewers at No. 4, June term, 1889, as already appears, was disapproved by the grand jury, and the commissioners were therefore without any authority to act under those proceedings. To cure this defect an entry was made by the clerk on the margin of the minutes above quoted that "the number and term referred to in this minute is an error, and should read No. 1, June term, 1891."   Whether this correction was made by the clerk of his own motion, or whether he was directed by the commissioners to make it, does not appear, and, in even the latter case, it is still insufficient and inoperative, as it does not show whether the term and number in 1889 were a mere error of the clerk in recording the motion or were an error in the motion itself as agreed to by the commissioners.   In the latter case nothing but a new vote of the commissioners could rectify it, and until such correction the record, as it stands up to the present time, shows a clear defect of authority to build at all.

The learned judge below reviewed these various objections, but was of opinion that they could be effectually cured by a resolution of the commissioners, and were not sufficient to invalidate the proceedings.   It was in pursuance of this suggestion by him that the abortive attempt at approval was made by the commissioners which has just been discussed.   We cannot concur in this view.

It is argued by appellant that the approval of the bridge as a county bridge by the commissioners must be entered of record in the quarter sessions, and though the statute is somewhat indefinite on this point, yet such seems to be its fair intendment. The Act of June 13, 1836, P. L. 560, provides that "the court having jurisdiction as aforesaid . . . . shall order a view . . . . and if on the report of viewers, it shall appear to the court, grand jury and commissioners of the county, that such bridge is necessary and would be too expensive for such township, or townships, it shall be entered on record as a county bridge:" Sec. 35.

"Whenever a bridge shall be authorized and recorded as a county bridge, it shall be the duty of the commissioners to pro-

cure an estimate of the cost thereof, and provide in the county levies the moneys necessary to defray the same, and proceed to have such bridge erected," etc.: Sec. 36. While it is not said distinctly on what record the entry shall be made, yet the direction to enter on the record is in the same sentence that gives the court jurisdiction and prescribes the steps in the procedure, a view, and the approval of the report of the viewers by the court, the grand jury and the county commissioners. These are prerequisites to the authority to build, and all of them except the approval by the commissioners are direct proceedings in the quarter sessions. The action of the commissioners should appear in the same record. Unless it does so appear the record shows merely an incomplete proceeding, and without the preliminary action of the other bodies, the records of the commissioners fail to show any authority for their action. The proper practice is for the commissioners to pass a resolution formally expressing their concurrence in the view that the bridge is necessary and too expensive for the townships, and to file a copy of such resolution in the quarter sessions, the record of which will then show a complete proceeding carrying authority to build.

We are not to be understood as holding that this course is indispensable in the first instance. If it should become important at any time, a copy of the resolution or even a minute of less formal action by the commissioners could no doubt be allowed by the court to be filed nunc pro tunc to complete its record. But in the present case there never was any approval by the commissioners nor even any attempt to approve until too late. The statute contemplates a proceeding at least reasonably continuous. A break of seven years and a half and then precipitate action by new officers is clearly unreasonable. All parties interested might fairly have inferred that the enterprise had been abandoned. The proceedings in this case from the start are unfortunately too grossly irregular and defective to be sustained, and would have to be quashed upon motion of any party having an interest to give him standing.

The standing of the complainant is questioned but without just ground. The railroad is in long continued and existing possession and operation at the point of controversy. The answer of defendants admits that the construction of the bridge in the

manner proposed will necessitate a grade crossing. That of itself is an admission of damage to the complainant. Grade crossings of railroads are intrinsically dangerous and are against the policy of the state. The Act of June 19, 1871, P. L. 1361, gives the courts of equity jurisdiction over the crossing of one railroad by another, and commands that "if in the judgment of said court it is reasonably practicable to avoid a grade crossing," they shall prevent it. "The manifest purpose of this," said STERRETT, C. J., in Penna. R. Co. v. Braddock Electric Ry. Co., 152 Pa. 116, "is not merely to discourage grade crossings because of their danger to the public as well as injury to the company whose road is crossed, but also to prevent them whenever in the judgment of the court it is reasonably practicable to avoid" them. This is the uniform doctrine of our cases : P. & C. R. R. Co. v. S. W. Penna. Ry. Co., 77 Pa. 173; Perry Co. R. R. Extension Co. v. Newport, etc., R. R. Co., 150 Pa. 193; Scranton, etc., Traction Co. v. Del. & Hudson Canal Co., 180 Pa. 636; Penna. R. Co. v. Warren Ry. Co., 188 Pa. 74; Chester Traction Co. v. P. W. & B. R. R. Co., 188 Pa. 105; Altoona, etc., R. R. Co. v. Tyrone, etc., R. R. Co., 160 Pa. 623; Pittsburg Junc. R. R. Co. v. Fort Pitt Ry. Co., 192 Pa. 44; Williams Valley R. R. Co. v. L. & W. Street Ry., 192 Pa. 552. In Bryner v. Youghiogheny Bridge Co., 190 Pa. 617, it was said : "The courts have not yet been invested with the same authority to regulate grade crossings of railroads over ordinary streets and highways, but the same considerations of safety to life and property, though in a less imperious degree, require the application of the same general policy." It must therefore be accepted as the settled policy of the state as administered by this court, that wherever the subject comes within its jurisdiction and control, no grade crossing of a railroad over another railroad or a common highway will be permitted except in case of manifest and unavoidable necessity.

Decree reversed, bill reinstated and injunction directed to be issued enjoining defendants, their officers, agents and employees from further proceeding in the construction of the bridge in controversy in such manner as to interfere with the property or operations of the complainant. Costs to be paid by the appellees.