## Spruce Run Bridge.

*Bridges — County bridge — Procedure — Report of viewers—Approval of report by grand jury—Confirmation by court—Adoption by county commissioners.*

1. A bridge cannot be erected as a county bridge unless there has been (1) a report of viewers recommending that it be built as a county bridge; (2) approval of the report by the grand jury; (3) confirmation by the court; and (4) adoption by the county commissioners. An unfavorable action at any one of these stages is fatal.

2. An endorsement on the report of these words, "Approved, Francis T. Baker, Foreman," is not a sufficient record, without more, of the approval of the grand jury.

3. Nor are the words written on the face of the report, "Sept. 4, 1920, Costs to be paid by county, Albert W. Johnson, P. J.," sufficient to show a confirmation by the court.

Petition for county bridge. Q. S. Union Co., March Sess., 1920.

*C. C. Lesher,* for petitioners; *Cloyd Steininger,* for county commissioners.

POTTER, P. J., Nov. 25, 1922.—From the records we gather that on Jan. 17, 1920, a petition was presented to the Court of Quarter Sessions, asking for the appointment of viewers to view the site for a proposed county bridge across Spruce Run at Bowersox's saw-mill, Spruce Run being the dividing line, at this point, between Buffalo and White Deer Townships.

Upon the presentation of this petition, P. B. Linn, Esq., Calvin Hays and John Try were appointed as viewers, who, after giving the proper and legal notices of the time and place of meeting, on May 12, 1920, met at the site for the proposed county bridge for the purpose of performing their duties as viewers.

These viewers, on May 17, 1920, filed their report, wherein they recommended that the proposed bridge be erected by Union County as a county bridge, and this is the only and last record we have relative to this proposed county bridge.

Before a bridge can be erected as a county bridge there are four successive stages through which it must pass, namely: (1) A report by the viewers recommending that it be built as a county bridge; (2) the approval of this report by the grand jury; (3) confirmation by the court; and (4) the adop-

2 D. & C.

tion of it by the county commissioners and its entry upon their records as a county bridge. An unfavorable action at any one of these mentioned stages is fatal.

So far as the records show, all we have in this case is the report of the viewers, which is favorable to the petitioners. The next step should be its approval by the grand jury. On the face of the report of the viewers we find the following: "Approved, Francis T. Baker, Foreman." If this is to be an endorsement of the report by the grand jury, there is very little on its face to indicate it to be such. It is not dated. We do not know when this approval was written, nor by whom. It might be said that Francis T. Baker was the "foreman" of the grand jury, and by an examination of the records back several years we find he was appointed as foreman of the grand jury. If, indeed, the successive stages following had been promptly followed up, namely, the confirmation by the court, and its adoption by the county commissioners, we might feel constrained to pass over this faulty approval of the report of the viewers by the grand jury, if, indeed, it was such. But the next step is lacking, that of the confirmation by the court. Written on the face of the report we find the following: "Sept. 4, 1920, costs to be paid by county, Albert W. Johnson, P. J." This is not a confirmation by the court, and we do not think it was intended as such. So that this report of viewers has been lying somewhere among the papers of this court since Sept. 4, 1920, quietly and peacefully reposing in the archives, and no one has during that time, apparently, taken any thought about it till now, when it has been awakened from its Rip Van Winkle sleep, has been assisted into the court-room, and we are asked to confirm it.

Or, in other words, this vanishing creature of the public highways started out in life full of strength and vigor, but in traveling the mazes and intricacies of the world, it sunk down to rest on a flowery bed of roses, and at this late day has suddenly awakened to find that it has fallen far behind in the march of life, and we are requested to rush it through and again place it in the front ranks.

Or, we might further liken it to some one who, by causes of the world, has become old, decrepit and worn out, who cannot any more successfully struggle against the waves and surges of adversity, and we are now asked to miraculously work a complete rejuvenation of this physical wreck by washing it in Ponce de Leon's famous fountain of youth, by the insertion into its vital parts of a monkey gland, or some other species of legerdemain equally as effective.

But, dropping this vein of irony, let us get at the root of the matter. Over two years has intervened since any action was taken on this petition. Since that time the situation may have completely changed. The bridge may not *now* be necessary for the traveling public. The public may have adopted other means of crossing this stream of water, and what proof have we that this may not have happened? What proof have we that the necessity for the bridge exists now as it did when the view was held? Before confirming this report, the court should be satisfied of the necessity of the bridge.

The law contemplates that these successive steps be pursued within such time as is reasonable and consistent.

In the case of Railroad Co. *v.* Lawrence County, 198 Pa. 1, seven and one-half years was held to be too long, and in that case all the successive stages were had.

In the case of Com. *v.* Baker, 212 Pa. 230, it is said: "The concurrence of all three bodies must be reasonably continuous." In that case a period of four years was held too long.

Spruce Run Bridge.

Or, in other words, the petitioners are expected to follow up each successive step incident to the proceedings, or furnish some valid excuse why this was not done. No excuse has been offered here; and, in the absence of such justifiable excuse, we think the petition has been too long delayed.

The county commissioners are the custodians of the public funds. Even more is expected of them in their official capacity than as individuals. Before they appropriate money for any public purpose, they have a right to know that each successive step in the proceedings strictly complies with the law. We cannot say that in this case, and, therefore, we cannot confirm this report.

And now, to wit, Nov. 25, 1922, the confirmation of this report of viewers is refused.

From Charles P. Ulrich, Selins Grove, Pa.