Williams Valley Railroad Company, Appellant, *v.* Lykens and Williams Valley Street Railway Company.

*Railroads—Electric railways—Grade crossing—Act of June 19, 1871.*

The ownership of land in fee by a railroad company, whereon rests its superstructure, gives it no right to exclude subsequent grantees of the commonwealth from the use of the highway or public road which crosses it.

The purpose of the Act of June 19, 1871, P. L. 1361, was to discourage grade crossings, and absolutely to prohibit them where it was reasonably practicable to avoid them. What is reasonably practicable under such

.circumstances is determined largely by what is physically practicable, and not by what is practicable to the treasury of the road seeking to cross. The cost of avoiding a grade crossing is a matter to be considered in projecting the new road, and then sufficient capital should be provided to avoid that which the law in effect condemned.

Neither the street railway Act of May 14, 1889, P. L. 211, nor any subsequent legislation repealed the crossing provision in the act of June 19, 1871.

The courts will enjoin a crossing of an electric railway over a steam railroad at grade, where it appears that the public road on which the street railway was built was, for between 300 and 400 feet on each side of the road, almost level; that an overhead bridge presented no engineering difficulties in the construction or use, and that the cost of such bridge would be from $7,000 to $10,000.

Argued May 29, 1899. Appeal, No. 12, May T., 1899, by plaintiff, from decree of C. P. Dauphin Co., Equity Docket, 1898, No. 243, on bill in equity. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for an injunction.

The facts appear by the opinion of SIMONTON, P. J., which was as follows :

The plaintiff avers in its bill that it is a corporation of the state of Pennsylvania and the owner of a steam railway running from the borough of Lykens, Dauphin county, to Brookside, on the line of the Philadelphia and Reading Railway, in Schuylkill county, over which about twelve passenger and freight trains pass daily; that it passes through the township of Williams, Dauphin county, and crosses at grade the only direct public highway in said township between Williamstown, Dauphin county, and Tower City, Schuylkill county ; that it is the owner in fee of its right of way at the point where it crosses said public highway; that the defendant is a corporation chartered under the provision of the Act of May 14, 1889, P. L. 211, for the purpose of constructing, maintaining and operating a street railway for public use upon certain streets in the borough of Tower City, in Schuylkill county, and in the boroughs of Lykens and Williamstown, in Dauphin county, and upon a certain public road in the townships of Williams and Wiconisco, in Dauphin county, and Porter township, in Schuylkill county ; that the route of said proposed railway passes over the public road

above referred to, which is crossed by plaintiff's railroad at grade at a point where the grade of said railroad is about three per cent, and that owing to certain obstructions the view of the plaintiff's railway from the public highway at certain points is obstructed; that the proposed crossing of plaintiff's railroad at grade by defendant's railway would be diagonally at an angle of about twenty-five degrees, which would make a crossing dangerous to plaintiff's trains, because of the danger of throwing the engine off the track, and that plaintiff believes there is no imperious necessity of crossing at grade, but avers that it would be reasonable, practicable and convenient to cross above grade by an elevated bridge or overhead crossing, and that a crossing at grade would increase the danger of accident at plaintiff's railroad crossing to private conveyances passing over and along said highway. Plaintiff also, in an amendment to its bill, avers that it is informed and believes that the defendant has not obtained the valid legal consent of the municipalities and local authorities of the boroughs and townships through which said highway passes, over and upon which it proposes to construct its railway, and claims that it is necessary for defendant to show affirmatively such consent before it is legally authorized to build or construct the said railway or any part of the same, and that it has not obtained the consent of certain owners (naming them) of land abutting on said public road.

Defendant in its answer admits and avers that the route of its proposed railway passes over the public highway mentioned in plaintiff's bill between the borough of Lykens, in Dauphin county, and Tower City, in Schuylkill county, but denies that it passes over the land of plaintiff, and denies that the fee to the soil covered by the said highway is in the plaintiff, and denies that the plaintiff has the right to the use of the land covered by said highway for its own purposes in any way that is not consistent with the public easement. Defendant further denies that there is any obscuration of the plaintiff's railroad or diffculty in seeing it by those traveling over the public highway, and that the grade of plaintiff's railroad is not so great as is alleged in the bill; that the railroad crosses the public road almost in a straight line; that the grade of the public road on both sides rises towards the crossing, and that it is not reasonably practicable to build an overhead crossing,

which, if constructed on the public highway, would be a greater inconvenience to the traveling public and more dangerous by reason of the grade necessary to be made on both sides than a grade crossing under proper regulations; that plaintiff has no right in said public highway for which it should be compensated, and that in respect to a mere crossing a railroad company is not an abutting landowner to a passenger railway, and denies that plaintiff has a fee in said public highway at said crossing. In its answer to plaintiff's amended bill, defendant avers that it has obtained all necessary legal consent of the authorities of the several municipalities and townships through which it passes for the location and construction of its entire road, and that it has also secured the consent of all the abutting property owners named in the bill on the public roads and highways whereon it is proposed to locate and construct its road.

These are, substantially, the averments of the bill and answer. From the evidence produced at the trial we find the facts, so far as we consider them in issue, to be as follows, taking for granted what is not disputed, that plaintiff and defendant are each duly incorporated: Defendant has procured the consent of the several municipalities and local authorities of the boroughs and townships through which the highway extends over which it proposes to construct its railway, and it has accepted the provisions of the several ordinances adopted by these municipalities, except that no formal acceptance of the ordinance of the borough of Lykens has been made, and the time within which this ordinance, according to its terms, may be accepted, will not expire until July 23. Plaintiff has failed to prove that defendant has not obtained the consent of all the owners whose land abuts upon the highway. One of these, called as a witness, refused to answer whether he would consent or not, and in any event we do not think this is a question that can be litigated by the plaintiff. Plaintiff is the owner in fee of its right of way where it crosses the highway, but is not the owner of any land at this point except its right of way. There is nothing in the topography of the territory, or the character of either of the roads, or the business done or to be done upon them, so far as shown by the evidence, from which we can find that it would be " reasonably practicable " to avoid a grade crossing at this point. Plaintiff has not furnished us with any

evidence tending to show how such crossing could be avoided. Plaintiff has but one locomotive engine, which passes ordinarily six times every secular day across this highway in both directions, with one or two passenger trains of two cars, one or two mixed trains of two to four cars, and the others, freight trains of from two to six cars each. There is no special difficulty in defendant's and plaintiff's trains seeing each other when approaching the crossing, and both the railroad and the public road are in plain view of a person at the crossing for nearly half a mile, and there is no element of danger in the crossing except what may exist because of the fact that the approach to the crossing in one direction on plaintiff's road is down a grade of nearly three per cent.

Plaintiff contends on the facts, which we think we have substantially stated above, that it has the right to prevent defendant from crossing its road at grade, among other reasons, because it is the owner in fee of its right of way where the highway in question crosses it. We do not so understand the situation. Plaintiff has only a right of way for the purposes of its railroad, whether fee or easement, and its crossing is upon a public highway, to all the rightful uses of which its property is subject: Penna. R. Co. v. Ry. Co., 176 Pa. 559. Plaintiff contends further that as the ordinance passed by the borough of Lykens, granting defendant the right to construct its railway through the borough, contains conditions, and provides in section 7: "The said company shall, before any right or privilege hereby granted shall become operative or be enjoyed by them, signify in proper writing with the secretary of council, within thirty days after approval of this ordinance, their acceptance of all the regulations, conditions and restrictions of this ordinance;" and defendant has not accepted it in the manner here provided, defendant has no right to construct its road. This ordinance was passed originally December 9, 1897. It was afterwards ratified and confirmed to defendant June 22, 1898. Therefore, if it requires an acceptance by defendant, we do not think we would be justified in enjoining it from building its road in the absence of any objection by the borough, and in assuming that it will not accept the ordinance. If it fails to do so within the time limited it will be open to the plaintiff to take such advantage of its neglect as may be legal.

There remains the question whether the crossing should be at grade. As we have said, there is an almost total lack of evidence to show how any other crossing could be made. The act of 1889 declares that railway companies shall have the right to cross at grade. The Supreme Court has decided that this provision of the act of 1889 is repealed by the act of 1871, and however difficult it may be to understand how a later act can be repealed by an earlier, we are bound by this decision. The repeal, however, is not absolute; it applies only where it is in the opinion of the court "reasonably practicable to avoid such crossing." We think, therefore, that the prima facie right remains, and that it rests upon the party objecting to furnish the court with facts, if they exist, that make it reasonably practicable to avoid such crossing. As this has not been done, probably because it could not be, we are brought to the conclusion that if grade crossings are to be allowed in any case we cannot prohibit this.

One of defendant's witnesses testified that there would be no more danger in a railway crossing at grade at the point in question than in crossing with ordinary wheeled vehicles, and we believe this to be the fact. The railway crossing can be controlled by the court under proper regulations, so as not to interfere with the business of the plaintiff or the safety of the public, while this is not the case when a railroad crosses a public road at grade. We believe much of the opposition to grade crossings that is expressed in judicial opinions, when the question is raised by controversies between railroad and railway companies, is in reality prompted by the danger felt to exist in the crossing of ordinary highways by railroads at grade. And we think it should be open to municipal and local authorities to apply to the courts to determine the propriety of permitting projected railroads to cross public highways at grade, and either to prohibit this or make proper regulations under which it should be permitted. This, however, by the way.

After such considerations as we have been able to give to the case, our conclusion is, that the injunction asked for must be refused. The bill, however, will not be dismissed, but in case the parties cannot agree upon the manner in which the crossing shall be made, either, upon notice to the other, or both, may apply to the court to make such order in the premises as may be considered proper.

The court subsequently entered the following final decree :

And now, December 8, 1898, . . . . it is ordered and decreed that the defendant be and is hereby permitted to construct and maintain a crossing at an angle of not less than forty-five degrees over the plaintiff's track at the point described in the bill of complaint according to the plan filed as aforesaid, at such time as to cause the least delay to the trains and traffic upon the plaintiff's road; that in using the said crossing for the passage of its cars the said defendant shall cause its cars to come to a full stop at least twenty-five feet from the said crossing and shall send its conductor or other employee to the crossing requiring him to look in each direction along plaintiff's track and to signal the defendant's car to cross only when plaintiff's track is clear from an approaching train or car ; that the trolley wire for the operation of the defendant's car over said crossing shall be constructed and maintained at a height of at least twenty-two feet above the level of the plaintiff's track; that the said crossing be constructed and maintained at the expense of the defendant and that the same shall at all times be kept in proper order by the defendant, at its own expense, for the safe passage of the plaintiff's trains over the said crossing.

*Error assigned* was the decree of the court.

*H. E. Buffington* and *Robert Snodgrass,* with them *Carrol R. Williams,* for appellant.—It has been abundantly settled by numerous decisions that the Acts of June 19, 1871, P. L. 1361, and May 14, 1889, P. L. 211, must be construed together, and that the latter act does not take from the court the power to prevent or regulate grade crossings in respect of street railways. Under the decisions, as they now stand, it is the duty of the court to prevent such crossings wherever it is reasonably practicable to avoid them: Penna. R. Co. v. Braddock Electric Ry. Co., 152 Pa. 116 ; Perry Co. R. R. Co. v. Newport & Sherman's Valley R. R. Co., 150 Pa. 193 ; Traction Co. v. Canal Co., 1 Pa. Superior Ct. 409; Penna. R. Co. v. Warren Street Ry. Co., 188 Pa. 74.

It is well settled that the entire line of a proposed street railway, throughout the circuit of its route, is to be considered as an entirety, and that the power to construct such road can-

not be exercised in respect of any part of it until the proper consent for the construction of the entire line has been obtained: Penna. R. Co. v. Ry. Co., 167 Pa. 62; Penna. R. Co. v. Turtle Creek Valley Electric Ry. Cos., 179 Pa. 584.

The consent required is not alone that of the municipality and townships, through which the street railway is to pass, but also the consent of all the abutting owners; and the fact that certain abutting owners have not consented seems, under the decisions, to be sufficient ground to prevent its construction, upon the theory that it has not obtained a proper legal consent throughout its entire route: Thompson v. Traction Co., 181 Pa. 131; Northern Cent. Ry. Co. v. Harrisburg, etc., Electric Co., 177 Pa. 142.

*S. J. M. McCarrell* and *J. C. Durbin*, for appellee.—It has never been decided that a steam railroad company whose track crosses a public highway is such owner of property abutting upon the highway as is required to consent to the additional servitude of an electric railway in the highway before the same can be lawfully constructed. The legislature has expressly declared by the Act of May 14, 1889, P. L. 211, that such consent is not necessary, and has given to street railway companies the express right to cross the steam railroad track upon the highway, either diagonally or transversely, without any such consent: Penna. R. Co. v. Ry. Co., 176 Pa. 577; Thompson v. Traction Co., 181 Pa. 131; Ry. Co. v. Electric Co., 177 Pa. 142; Perry County R. R. Co. v. R. R. Co., 150 Pa. 193; Penna. R. Co. v. St. Ry. Co., 176 Pa. 577; Penna. R. Co. v. Warren St. Ry. Co., 188 Pa. 76.

OPINION BY MR. JUSTICE DEAN, July 19, 1899:

In this case, a trolley road sought to cross at grade a steam railroad in Dauphin county. The steam railroad filed this bill for an injunction to restrain such crossing. The learned judge of the court below, under carefully defined conditions, by final decree, permitted the grade crossing, and we have this appeal from that decree.

While there are six assignments of error, the merits of the appeal involve but two inquiries:

1. Has the appellee the right to cross the appellant's road by any method at the point of crossing?

2. If it have such right, then, under the facts and the law, is it " reasonably practicable " to avoid a grade crossing ?

As to the first question, the court below was clearly right in holding that the ownership of the land in fee by appellant, under the peculiar facts shown, whereon rested its superstructure, gave it no right to exclude subsequent grantees of the commonwealth from the use of the highway or public road which crossed it.    But, as to the second question, appellant, manifestly, was entitled to an answer in its favor.

Our utterances on the question of grade crossing have been so frequent and emphatic that it ought not to be necessary to repeat them.    In Railroad Co. v. Railroad Co., 150 Pa. 193, Penna. R. Co. v. Railway Co., 152 Pa. 116, and quite a number of cases following these, we have held, in substance, that the manifest purpose of the act of 1871 was to discourage grade crossings, and to absolutely prohibit them where it was reasonably practicable to avoid them ; that what is reasonably practicable under such circumstances is determined largely by what is physically practicable, and not by what is practicable to the treasury of the road seeking to cross ; that the cost of avoiding a grade crossing is a matter to be considered in projecting the new road, and that then sufficient capital should be provided to avoid that which the law in effect condemned.    And further, we have held in all these cases, that neither the street railway act of 1889, nor any subsequent legislation, repealed the crossing provision in the act of 1871.    As said by our Brother GREEN in Railroad Co. v. Street Railway Co., 188 Pa. 74 : " The one test imposed by the statute is the reasonable practicability of the overhead crossing.    If that is established other considerations become unimportant.    We desire to announce again that we firmly adhere to the policy, and to the rules and principles expressed in the decisions to which we have referred."

The court below held that, prima facie, under the act of 1889, appellee had the right to cross at grade, and the burden was upon the objecting steam railroad to establish that other than a grade crossing was reasonably practicable ; that, not having established this fact, the court must allow the crossing, and then follow, among others, these remarks in the opinion : " We believe much of the opposition to grade crossings that is expressed in judicial opinions, when the question is raised by controversies be-

tween railroad and railway companies, is in reality prompted by the danger felt to exist in the crossing of ordinary highways by railroads at grade. And we think it should be open to municipal and local authorities to apply to the courts to determine the propriety of permitting projected railroads to cross public highways at grade, and either to prohibit this or make proper regulations under which it should be permitted."

We do not think the case should turn on a rule of evidence applicable to a common-law action. The 1st and 2d sections of the act of 1871 make it the duty of the court to inquire and ascertain the facts with reference to the authority of the corporation, and especially, as a basis of information for a proper decree for a crossing, to ascertain whether one at grade can be avoided. The commonwealth intended by the act to protect the lives and limbs of citizens as well as the property rights of litigating corporations ; therefore, there is a duty upon the court to inquire in the interest of the public, which is not directly a party to the issue, whether it is reasonably practicable to avoid a grade crossing. The court cannot lightly assume, as here, because the steam railroad, in the main, rested its case on the ownership of the fee of its right of way, that there was no duty of further inquiry.

And the learned judge is wholly mistaken in assuming, that judicial opinion as to the danger of grade crossings is largely prompted by that incident to the ordinary public road crossing of a railroad. Although greatly demanded, that matter as yet has received but little legislative attention. Crossings, however, by one railroad or railway over another have been the subject of express legislation to the extent of almost absolute prohibition of the dangerous grade crossing. This legislative recognition of the duty of preventing them, concurring with judicial knowledge derived from damage suits, has moved this court to expressions of opposition and to rigid enforcement of the law ; and no local sentiment favorable to increased facilities for local travel and communication should swerve a court from its duty to carry out strictly the intent of the statute.

But the evidence before us shows that it is reasonably practicable to avoid a grade crossing at this point. An inspection of the photographs, 1, 2 and 3, shows that the public road, for between 300 and 400 feet on each side of the railroad, is almost

level, and that an overhead bridge presents no engineering difficulties in construction or use.   When we know by everyday observation such bridges are built to avoid just such grade crossings as the one proposed here, why is not the avoidance of this one reasonably practicable?   The appellant's engineers testify that it is, and give in detail their reasons; appellee's, that it is not.   The opinions of the latter, however, are in the main founded on a possible obstruction of the highway by a bridge and the want of authority to deflect from it.   But can any one who has ridden over the Fairmount Park trolley railway, which is absolutely prohibited from crossing the park roads at grade, doubt the practicability of avoiding this grade crossing?   Besides, the cost of an overhead crossing, $7,000 to $10,000, when compared to the peril to the public thereby avoided, is trivial.

We think the learned judge of the court below was clearly mistaken in finding that it was not reasonably practicable to avoid this grade crossing.   The decree is therefore reversed and set aside at costs of appellee, and it is ordered that appellee do not construct, maintain and operate its railway at grade on appellant's steam railroad tracks where the public highway crosses said steam railroad, or at any other point adjacent thereto.