## Baltimore & Ohio Railroad Company, Appellant, *v.* Butler Passenger Railway Company.

*Railroads—Location—Grade crossing—Street railways—Act of June* 19, 1871, *P. L.* 1360.

It is the settled policy of the state of Pennsylvania as administered by the courts to permit of no grade crossing of a railroad over another railroad, or a common highway, except in case of manifest and unavoidable necessity.

In determining whether it is practicable to avoid a grade crossing, the court will not consider the expense of an overhead structure, nor its unsightliness, nor the fact that damages may have to be paid to the owners of private property by reason of the erection of such structure; nor that an overhead structure will interfere with travel on a street, will frighten horses, and will obstruct the view of coming trains; nor that local sentiment is in favor of such grade crossing.

A grade crossing of a street railway over a steam railroad company's established track in a borough will be enjoined where it appears that the steam railroad crossed the street intended to be occupied by the street railway in a depression, the surface of the ground ascending in both directions from the tracks, that the street in question was very much traveled, that a thousand vehicles passed over the crossing daily, that thirty-four scheduled trains, beside extra trains, passed the crossing, and that it was practicable to build an overhead crossing 800 feet long, although the witnesses differed as to the cost of such crossing.

Argued Oct. 21, 1903. Appeal, No. 139, Oct. T., 1903, by plaintiffs, from decree of C. P. Butler Co., Dec T., 1902, No. 5, on bill in equity in case of Baltimore & Ohio Railroad Company, operating the Pittsburg and Western Railroad, and the Pittsburg & Western Railroad Company v. The Butler Passenger Railway Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity to enjoin a grade crossing. Before GAL-BREATH, P. J.

The facts are stated in the opinion of the Supreme Court.

The court entered the following decree:

And now, to wit: August 15, 1903, this cause came on to be heard at this term, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged, and decreed as follows, viz:

1. It is not reasonably practicable in the construction and operation of the street railway system of the defendant company upon Center avenue in the borough of Butler, Pennsylvania, at the point where the track crosses the tracks of the Baltimore & Ohio Railroad Company, operating the Pittsburg & Western Railroad, to avoid a crossing at grade.

2. That the Butler Passenger Railway Company, and its successors in the franchise, shall have the right to construct and operate its road on Center avenue in said borough of Butler across the roadway and tracks of the Baltimore & Ohio Railroad Company, operating the Pittsburg & Western Railroad, at grade, subject to the payment hereafter, when legally ascertained, of such damages as the plaintiff company may thereafter sustain, arising from the negligence of the defendant company in the operation of said crossing.

3. Such crossing shall be constructed by the defendant company at its own cost under the supervision of the plaintiff company's engineer or agent, the representatives of plaintiff company to be appointed and ready to act within ten days after request to this effect made by the defendant company. Upon failure of such engineer or agent to act, after such notice given, the defendant company may proceed without delay to construct such crossing.

4. That the said crossing shall be kept in good condition by the defendant company as to repairs and renewals, and at its expense. In case of the failure of the defendant company upon notice from the plaintiff company for the period of one week thereafter to make such repairs and renewals as may be required, the same may be made by the plaintiff company, and the reasonable expense thereof recovered by it from the defendant.

5. The defendant company shall construct and maintain de-

railing switches upon Center avenue on both sides of the tracks of the plaintiff company; the switch upon the east to be at least sixty feet east of the main track, and that upon the west to be at least sixty feet west of the most western track. The lever operating east-bound cars shall be placed east of the main track and that for operating the west-bound cars shall be placed immediately west of the main track.

6. Before entering upon or crossing over the tracks of plaintiff company, each car of defendant company shall come to a full stop at least sixty feet from the nearest track in the line of approach, and the conductor thereof shall go upon the track of the plaintiff's road, look and listen for approaching trains. He shall then, if the tracks are clear of approaching trains, signal the motorman of the car to proceed. Until such signal is given no car shall cross the tracks.

7. The defendant company shall construct and maintain an effective and approved system of electric signals, which will indicate upon Center avenue, by the ringing of a bell in the daytime and by a colored light at night, the approach of a train on the plaintiff's road at any point within 200 feet both north and south of Center avenue.

8. The costs of this proceeding shall be paid by the defendant company.

9. The preliminary injunction heretofore granted restraining defendant company from crossing the tracks of the plaintiff company upon Center avenue, is hereby dissolved, and, upon compliance by the defendant company with the conditions of this decree to be performed by them, the plaintiffs' bill is dismissed.

10. That either party to this bill may upon ten days' written notice, where a shorter time has not already hereinbefore been fixed, to be given to any of the officers of the other company, apply to the court if in session, and if not in session, at chambers, for further advice, and for such modification or addition to these regulations as experience and observation, in relation to grade crossings, show that the safety of persons or property seem to require.

*Error assigned* was the decree of the court.

*R. P. Scott*, for appellants.—The appellee clearly has the

right to elevate its tracks to avoid danger to the employees and passengers of both itself and the appellants at the proposed grade crossing : Rahn Township v. Ry. Co., 167 Pa. 84–90 ; Penna. R. R. Co. v. Street Ry. Co., 176 Pa. 559 ; Pittsburg Junction R. R. Co. v. Fort Pitt St. Ry. Co., 192 Pa. 44.

But even if it does not have such right under its charter, it cannot cross the appellants' tracks at grade if it is physically practicable, reasonably practicable, to avoid such crossing : Scranton, etc., Traction Co. v. Canal Co., 180 Pa. 636 ; Pitts. Junction R. R. Co. v. Ry. Co., 192 Pa. 44.

Electric railway companies not being "invested with the privilege of taking private property for public use," are not liable for consequential injuries : Lockhart v. Craig St. Ry. Co., 139 Pa. 419 ; Pennsylvania R. R. Co. v. Braddock Electric Ry. Co., 152 Pa. 116.

The cost of avoiding a grade crossing is a matter to be considered by the company in the selection of its charter route, in the projection of its new road, and then sufficient capital should be provided to avoid that which the law in effect condemns : Scranton, etc., Traction Co. v. Canal Co., 180 Pa. 636 ; Pgh. Junction R. R. Co. v. Ry. Co., 192 Pa. 44 ; Kushequa Railroad Co. v. Pitts., etc., Railroad Co., 200 Pa. 526.

And the question of whether an overhead crossing is reasonably practicable is not to be determined by the financial ability of the road seeking to cross, but by the physical practicability of avoiding the grade crossing : Chester Traction Co. v. Railroad Co., 188 Pa. 105.

The fact that the capital of a railroad company is limited is not sufficient reason to justify a grade crossing : Perry Co. R. R. Co. v. Newport, etc., R. R. Co., 150 Pa. 193 ; Kushequa Railroad Co. v. Railroad Co., 200 Pa. 526.

The one test imposed by the statute is the reasonable practicability of the overhead crossing. If that is established, other considerations become unimportant : Williams Valley Railroad Co. v. Street Ry. Co., 192 Pa. 552.

In addition, a railroad company will not be permitted to interfere with the franchises of another railroad company, merely to avoid expense : Perry Co. R. R. Co. v. R. R. Co., 150 Pa. 193.

The intent of the act of June 19, 1871, is to discourage grade

crossings involving danger to the public as well as injury to the company whose road is to be crossed.

The time for grade crossings in this state has passed. They ought not to be permitted except in case of imperious necessity: Perry County R. R. Co. v. Railroad Co., 150 Pa. 193; Penna. R. R. Co. v. Electric Ry. Co., 152 Pa. 116; Penna. R. R. Co. v. Warren St. Ry. Co., 188 Pa. 74; Pittsburg Junction R. R. Co. v. Ry. Co., 192 Pa. 44; Chester Traction Co. v. R. R. Co., 188 Pa. 105; P. & L. E. R. R. Co. v. Lawrence Co., 198 Pa. 1; Scranton, etc., Traction Co. v. Canal Co., 180 Pa. 636; Penna. R. R. Co. v. Electric Ry. Co., 152 Pa. 116; New York, etc., R. R. Co. v. Warren St. Ry. Co., 188 Pa. 85.

*James Bredin* and *T. C. Campbell,* with them *P. W. Lowry* and *A. E. Reiber,* for appellee, cited: Smethport R. R. Co. v. Pittsburg, etc., R. R. Co., 203 Pa. 176; Scranton, etc., Traction Co. v. Canal Co., 180 Pa. 636; Northern Central Ry. Co.'s App., 103 Pa. 621; Perry Co. R. R. Co. v. R. R. Co., 150 Pa. 193; Chester Traction Co. v. R. R. Co., 188 Pa. 105; New York, etc., R. R. Co. v. Warren Street Ry. Co., 188 Pa. 85.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1904:

The Pittsburg & Western Railroad Company owns and operates, through its lessee and co-plaintiff, the Baltimore & Ohio Railroad Company, a railroad from Allegheny City, Pa., to Foxburg, Pa. The road, which has been in operation about twenty years, passes north and south through the borough of Butler and crosses at grade and almost at right angles Center avenue, one of the principal and much traveled streets of the borough. Of the three tracks that cross the avenue, one is used as the main line while the other two are used for switching purposes. The passenger station of the plaintiffs is about 180 feet north of the crossing; the freight station is 67 feet west of the passenger station, and the turntable and water tank are a short distance south of the crossing. The defendant company was incorporated under the act of May 14, 1889, with authority to construct and operate a street railway in the borough of Butler. On October 5, 1899, an ordinance was duly enacted, authorizing the company to construct a railway upon Center avenue and other streets of the borough. In pur-

suance of this authority the defendant company proceeded to construct a single line of railway along Center avenue, with the intention of crossing the tracks of the Pittsburg & Western Railroad at grade. When the road had been constructed to a point within a short distance of the plaintiffs' tracks this bill was filed, averring that a grade crossing was unnecessary and exceedingly dangerous and that it was reasonably practicable to avoid it, and praying the court so to decree, or, if a grade crossing were permitted, to define the mode and manner of crossing. A cross bill was filed by the defendant company, which prayed that the Baltimore & Ohio Railroad Company and the Pittsburg & Western Railroad Company be enjoined from interfering with the defendant railway company in the construction of its road at grade across the tracks of the Pittsburg & Western Railroad on Center avenue; that it be decreed that it is not reasonably practicable to avoid a grade crossing, and that the court by decree prescribe the necessary regulations to be observed by said companies for the operation of the crossing and the conduct of their business relative thereto.

The learned trial judge found the facts against the averments of the plaintiffs, refused their prayer for an injunction, and entered a decree permitting the defendant company, under certain prescribed regulations, to cross the plaintiffs' tracks at grade on Center avenue. From that decree this appeal was taken.

This is a contest between corporations and their rights must be determined under the Act of June 19, 1871, P. L. 1360, entitled, "An act relating to legal proceedings by or against corporations." The second section of the act declares: "When such legal proceedings relate to crossings of lines of railroads by other railroads, it shall be the duty of courts of equity of this commonwealth to ascertain and define, by their decree, the mode of such crossing which will inflict the least practicable injury upon the rights of the company owning the road which is intended to be crossed; and if, in the judgment of such court, it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade." The statute has been frequently construed and enforced by this court. "The act," says PAXSON, C. J., in Perry County Railroad Extension Company v. Newport, etc., Railroad Company,

150 Pa. 193, " does not put the rights of the company, desiring to cross the railroad of another, on a level with the rights of that company, but manifestly declares them to be secondary· Two thoughts are clearly expressed in this statute, the one, that no unnecessary injury shall be perpetrated on the road sought to be crossed ; the other, that crossings at grade shall be prevented whenever they can reasonably be avoided." And in the same case it is said : " The time for grade crossings in this state has passed. They ought not to be permitted, except in case of imperious necessity. They admittedly involve great danger to life and property." In Pennsylvania Railroad Company v. Braddock Electric Railway Company, 152 Pa. 116, STERRETT, J., says : " The manifest purpose of this (second section of the act) is not merely to discourage grade crossings because of their danger to the public as well as injury to the company whose road is crossed, but also to prevent them whenever in the judgment of the court it is reasonably practicable to avoid such dangerous and injurious crossing." In defining the duty of the courts under the second section of the act, DEAN, J., in Scranton, etc., Traction Company v. Del. & Hudson Canal Company, 180 Pa. 636, says : " So far as the possible may be considered the practicable, there are very few points on the surface of the state where other than grade crossings are not practicable. . . . In the first place we must assume, because the legislature in this enlightened age has impliedly so assumed, that it is unwise, if not reckless and barbarous, to unnecessarily subject the traveling public and the employees of carrying corporations to the death, maiming and horrors of collisions which inevitably result from grade crossings. And, if it be reasonably practicable to avoid a grade crossing, then the question as to what extent the risk of such a crossing may be reduced is immaterial, for the law assumes and experience demonstrates that extraordinary care by both parties using such crossing, aided by all the advances in science and mechanics, has only resulted in lessening the risk and not abolishing it. In deciding, therefore, what is reasonable we are bound to keep in mind the consequences to be avoided. . . . Safety is the object in view, and, therefore, in determining what is reasonable, we must balance expense and difficulty against loss of life and limb." In Pennsylvania Railroad Company v. Warren

Street Railway Company, 188 Pa. 74, it was held that in determining whether it was practicable to avoid a grade crossing, the court would not consider the unsightliness of an overhead structure as of any consequence nor give weight to the fact that damages might have to be paid to the owners of private property by reason of the erection of the structure. It is also said in that case that consideration of the probabilities or improbabilities of collisions by reason of extraordinary precautions to be prescribed in the decree is not an element in the determination of the question whether it is reasonably practicable to avoid a grade crossing. And in the very recent case of Pittsburg & Lake Erie Railroad Company v. Lawrence County, 198 Pa. 1, MITCHELL, J., in concluding the opinion of the court, says : " It must therefore be accepted as the settled policy of the state as administered by this court, that wherever the subject comes within its jurisdiction and control, no grade crossing of a railroad over another railroad or a common highway will be permitted except in case of manifest and unavoidable necessity."

These and other decisions of this court construing the act of 1871 make it manifest that the statute will receive a literal construction and that it will be rigidly enforced. The legislature, recognizing the danger to human life and to property in the grade crossing, intended by this act to confer upon the courts the authority, not to minimize, but entirely to remove, the danger by preventing the crossing wherever it is reasonably practicable to do so. In all cases of a proposed grade crossing, therefore, the only question is whether it is reasonably practicable to avoid it, and if so, the statute is mandatory that the court shall prevent it. In determining this question, the plain purpose of the statute, to protect life and property, is not to be ignored or disregarded. Experience teaches with absolute certainty that a grade crossing is unsafe and that its existence is a standing menace to human life. This fact should be kept constantly in mind in adjudicating the rights of railway companies in proceedings under the act of 1871. No light, trivial or financial consideration, under a proper interpretation of the statute, can be invoked to sanction the imperiling of human life by permitting a grade crossing.

We do not think the facts in this case justified the learned

trial judge in his conclusion that it was not reasonably practicable to avoid a crossing of plaintiffs' tracks by defendant's road at grade on Center avenue. His opinion discloses his reasons and also the fact that he gave weight to certain considerations which should have no place in determining the question he was required to solve. As a basis for his conclusion he finds and states that the travel on Center avenue is heavy and the street is necessary to connect the old and new parts of the town; that the trains always stop at the station and hence must necessarily pass slowly over the street; that there has been no accident at the proposed point of crossing; that the defendant company has not obtained the consent of the borough for an overhead structure and that such structure would occupy more of the street than is available and the damages sustained by the owners of private property along the street, occasioned by the erection of the structure, would be very heavy; that the bridge over Connoquenessing creek, as at present constructed, would not support the viaduct; and that an overhead structure would interfere with travel on the street, would frighten horses, would obstruct the view of coming trains and thereby endanger the safety of those using the street; would be unsightly and would impose such an expense upon the defendant company as to prohibit the construction of its road. He also found that under the circumstances of the case, "the railroad crossing upon Center avenue is a safe crossing, the element of danger being reduced to a minimum." Under his findings of fact the learned judge held "that an overhead crossing instead of a grade crossing would be simply the substitution of one danger for another, at a large expenditure of money, without any compensating good," and accordingly refused to enjoin the defendant company from crossing the plaintiffs' tracks at grade.

We are convinced, however, by the testimony and the facts found by the court below that the crossing of the plaintiffs' road on Center avenue by the defendant company's tracks would be most dangerous and can, and should, be avoided. On the east side of the railroad the street descends to the tracks on a grade over eighteen feet in a distance of 356 feet, and on the west side it descends from McKean street, crossing the tracks of the Pittsburg & Bessemer Railroad, to Connoquenessing creek, which is about 150 feet west of, and parallel with,

the plaintiffs' road. In other words, the plaintiff's railroad is approached from both directions on Center avenue on a descending grade, and on the west by crossing a bridge over the creek and the tracks of another railroad about 280 feet distant. As the learned judge finds, this will likely become one of the defendant's main lines of traffic in the borough and will possibly carry more passengers than any other part of its road. The population in the southeast part of the town is already large and is rapidly increasing, and they would use the line on Center avenue in going to the main or principal business part of the borough. At present a thousand vehicles, as well as a very large number of pedestrians, pass over the crossing daily. It also appears that thirty-four scheduled trains on the plaintiffs' road pass daily over this crossing, " in addition to which there is usually a large number of extra trains, shifting engines," etc. Notwithstanding these facts the trial judge finds the crossing would be safe to a minimum degree.

We are wholly at a loss to understand by what process of reasoning the learned judge reached his conclusion. Universal experience unquestionably leads to a different result. It is true, he says, that at this point the passenger trains "are slowed up ready for stopping," that the engineers can see the crossing for a long distance, and that an observer standing on the crossing can see along the railroad 1,000 feet in both directions. But these facts do not eliminate the danger at the crossing. As the plaintiffs control the management of the trains on their road they are at liberty at any time they think the traffic justifies it to make a schedule on which through trains may be run without stopping at Butler. The fact that so many extra trains are now running on the road would seem to indicate that there is at this time a necessity for a through service. The large number of shifting engines, which the court finds passes over the crossing, would not stop or be controlled in their movements by a schedule. All freight trains would not necessarily stop at the station ; some certainly would not. It is, therefore, apparent that the safety of the crossing should not be made to depend upon the stopping of some of the passenger trains at the station. Nor is the fact that an approaching train can be seen at a great distance by a person standing on the tracks at Center avenue any protection

to those who are approaching and about to pass the crossing. They could not see the train from either direction, for the learned judge has himself found that "from McKean street eastward to plaintiffs' tracks and for several squares beyond that point, both sides of Center avenue are quite closely built up with residences, stores, and manufacturing establishments." It is hardly necessary to suggest that to avoid a collision and insure safety, the conditions at the crossing should permit the traveler to see an approaching train before, as well as after, he is on the track.

If the crossing of Center avenue by the Pittsburg & Western Railroad is dangerous to pedestrians and others using the street, as the facts reported by the trial judge conclusively demonstrate, it is quite evident that it would be more dangerous to life and property for an electric railway to cross at grade the tracks of the steam road at this point. In fact the learned judge himself recognizes the danger of such a crossing and in his decree attempts to avert it by prescribing certain regulations in the use of the crossing. He says that these precautions will prevent a collision "unless the engineer and the conductor on the street car jointly contribute thereto through gross negligence." It was to avoid the consequences of the negligence, as well as of the recklessness or the stupidity, of the servants of corporations and as a protection against such causes of danger that the act of assembly declared that where it is reasonably practicable the courts "shall by their process prevent a crossing at grade." The legislature in the enactment of the statute also recognized the imperfection of human appliances and the probability of the failure to perform their functions. These were the reasons that moved the lawmaking power nearly a third of a century ago to declare that grade crossings should be abolished in the commonwealth wherever it is at all practicable to do so. Experience has verified the wisdom of such legislation and demands its rigid enforcement.

The court below entered a decree " that it is not reasonably practicable to avoid a grade crossing of plaintiffs' tracks by defendant on Center avenue." In arriving at this conclusion the trial judge seems to have been controlled principally by the following considerations: the demands of the public re-

quire the extension of the defendant's railway into the town of Springdale, and the only practicable route for the extension is over Center avenue; such extension involves the necessity of crossing plaintiffs' road; an overhead crossing would be prejudicial to business interests along that portion of the street occupied by the structure and would be dangerous to people traveling on said street.  From the authorities cited above, it would seem that these considerations should have little weight in determining the question whether it is reasonably practicable to avoid a grade crossing.  No local sentiment favorable to increased facilities for local travel and communication should swerve the court from its duty to carry out strictly the intent of the statute : Williams Valley Railroad Company v. Lykens, etc., St. Railway Company, 192 Pa. 552. We have also held that whether an overhead crossing is reasonably practicable is not to be determined by the financial ability of the road seeking to cross, but by the physical practicability of avoiding the grade crossing: Chester Traction Company v. P. W. & B. Railroad Company, 188 Pa. 105.  The cost and difficulties of constructing its road are for the consideration of a railroad or railway company when it selects its route, and will not control the court in determining the practicability of an overhead crossing.  The litigant railway corporations are not the only persons concerned in the crossing of their roads, but the public who use the trains have the right to demand the avoidance of a grade crossing if it is reasonably practicable to do so.  The necessity for the road as a means for transportation, the expense attending its construction and maintenance and the business interests of the owners of property along its route, are all commercial considerations subordinate to the safety of the public who patronize the roads and of the employees who operate them.  Hence, keeping in mind the manifest purpose of the statute conferring authority on the court to regulate or prevent grade crossings, it follows that what is physically practicable in constructing an overhead crossing must largely determine what is reasonably practicable. We are satisfied from the topography of the ground in the vicinity of the proposed crossing that it is physically practicable to construct an overhead crossing.  The great preponderance of the evidence shows the fact and it is in effect admitted by the

trial court.    The steam railroad crosses the street in a depression, the surface of the ground ascending in both directions from the tracks.    On the east, the ascent is immediate, and at a distance of 356 feet attains a height of eighteen and forty-five hundredths feet.    On the west, the ascent begins about 200 feet from the tracks and continues to McKean street, where, at a distance of 700 feet from the tracks, the elevation is about thirty feet.    The estimated length of the overhead structure is about 800 feet.    The witnesses interrogated with reference to the subject do not agree as to the costs of the construction of the viaduct.    But as to the physical practicability of the erection of the structure there is very little, if any, disagreement among the witnesses.

The proposed overhead structure to be used by the defendant's railway would not only avoid the crossing at grade of the plaintiffs' tracks but also those of the Bessemer Railroad which intersects Center avenue at or near the foot of a steep grade. It would also give the public the use of the county bridge across Connoquenessing creek, relieved from the annoyance and inconvenience incident to the operation of the street car line upon it.    We need not concern ourselves about the insufficiency of the present bridge to support the viaduct.    That is a matter for the consideration of the street railway company and may be easily remedied.    It in no way militates against the advisability of an overhead crossing.

We are convinced from the evidence that it is reasonably practicable for the defendant company to avoid crossing the plaintiff's tracks at grade on Center avenue.    It therefore follows that the trial court should have granted an injunction as prayed for in the plaintiff's bill.

The decree of the court below is reversed at the costs of the appellee, the bill is reinstated, and an injunction is directed to be issued perpetually enjoining the defendant company against crossing the tracks of the Pittsburg & Western Railroad at grade on Center avenue in the borough of Butler.    The cross bill is dismissed at the costs of the defendant company.