## APPLICATION OF THE GRADE CROSSING ACT.

Circuit Court of Lucas County.

THE WHEELING & LAKE ERIE RAILROAD COMPANY v. THE TO-
LEDO RAILWAY & TERMINAL COMPANY.*

Decided, November 9, 1907.

*Grade Crossings—Construction of the Act Relating Thereto—Meaning
to be Given to the Words "Reasonable" and "Practicable"—Con-
tinuation of Grade Crossings Will Be Permitted, When—Policy of
the Law to Protect Persons and Property from Injury and the
Rights of the Railway Companies Alike.*

1. While one of the purposes of the grade crossings act is to conserve
the public safety, railway companies will not be required to avoid
such crossings unless it is reasonable and practicable so to do.

2. Where an interlocking device has been in use at a grade crossing
for a considerable period, with favorable results from its operation
and comparatively little interruption to the trains of either road,
and to avoid the grade crossing would involve heavy expenses and
other hardships to the railway companies, a case is not presented
requiring the preventive application of the statute.

*Seiders & Duncan,* for plaintiff.
*King & Tracy,* contra.

WILDMAN, J.; HAYNES, J., and PARKER, J., concur.

For an understanding of the issues before us on the present
hearing and the facts involved, recourse may be had to the re-
citals in the hearing of the same case before the Supreme Court
of Ohio as reported in 72 O. S., 369, on a proceeding in error to
reverse the former judgment in this court. The case was treated
by the Supreme Court as involving an application for the ascer-
tainment of a mode of crossing of the Wheeling & Lake Erie
Railroad Company track by the Terminal Company, and was
remanded to this court for the purpose of such ascertainment.
The crossing of the plaintiff's tracks not having been enjoined,
the Terminal Company proceeded with its construction across

* Affirmed, without opinion, *Wheeling & Lake Erie Ry. Co. v. Toledo Ry.
& Terminal Co.,* 80 Ohio St., 540.

the plaintiff's roadway and has been in continuous operation
of its line at that point for about four years.  The issues, so far
as concern our present inquiry, are based upon the original act
as to grade crossings (95 O. L., 530), which was passed and took
effect May 10th, 1902.

The amendatory act of May 3d, 1904 (97 O. L., 548), is pre-
vented by Revised Statutes, 79, from affecting a pending pro-
ceeding, but it may have use as indicative of the tendency of
the Legislature to protect the future interests of any younger
company in two important respects; first, by providing that no
grade is to be required to exceed the established maximum or
ruling grade of such company; and, second, that the initial ex-
pense of construction and the expense of maintenance are to
be equitably apportioned between the companies.

It is doubtful whether under the original act which governs
the present case, the court would have power to impose any part
of such expense on the elder company.  Such was the view of
the Supreme Court of Pennsylvania in *Pennsylvania R. R. Co.* v.
*Warren Street Ry. Co.,* 188 Penn. St., 105, in which it was said:
"The courts have no power  *  *  *  equitably to apportion
the expenses among those interested."  The provision as to not
exceeding the ruling grade, however, indicates that in 1904 the
Legislature deemed it not so imperatively necessary to avoid a
grade crossing as to justify imposing a burden on the crossing
company which would destroy the effectual operation of its road;
in other words, that so to require would not be reasonably with-
in the contemplation of the law when applied to the junior road.
Both the original and amendatory statutes provide that:  "If
in the judgment of such court or the judge thereof it is reason-
able and practicable to avoid a grade crossing, it shall by its
process prevent a crossing at grade."  It is argued by counsel
for the plaintiff that the term "reasonable and practicable" as
embodied in our Ohio statutes, is synonymous with the term
"reasonably practicable," as found in the Pennsylvania statute.
It is said that the Ohio legislators have adopted the legislation of
the older state and that the phraseology of the Pennsylvania
statute had received interpretation by the courts of that state
which was presumably adopted with the enactment of our stat-
ute.

Before considering this contention, but assuming the general correctness of the principle claimed; which is recognized by the courts of Ohio in numerous cases, let us examine the phrase as used in the Ohio statute, comparing it with the one of Pennsylvania, in an effort to ascertain whether or not they are equivalent. The word "practicable" in either state may properly be defined as "feasible" or, in other words, "possible of accomplishment." The word "reasonable" as we find it in the Ohio statute, has been treated as substantially synonymous with the word "fair" in Jones v. Angell, 95 Ill., 376-382; with "impartial," in Thompson v. Beacon Valley Rubber Co., 56 Conn., 493-498; with "just," opinion of the Justice, 4 New Hampshire, 565; and by Webster with the words "just," "honest," "equitable" and "fair." Substitute any one of these alternative words for "reasonable" in our statute, and we have a phrase signifying that a grade crossing will not be prevented unless it can be justly, honestly, equitably or fairly done, having due regard to the rights and interests of both parties.

To the extent that the senior company has improved its right-of-way by its structures and expended its money, the companies do not stand on an equal footing; and the statute, both in its original form and as amended, wisely attempts to protect as far as possible the rights acquired by such use. It might be unavoidable for a crossing company to injure or destroy property in crossing, and under the principle enunciated in Railway v. Railway, 30 O. S., 605, even this would be permissible if demanded by the public welfare. The statute under which we are proceeding does not prohibit injury to property rights of the occupying company, but requires that in crossing the least practical (that is substantial) injury shall be inflicted. The implication is irresistible that some injury may be unavoidable if the junior company is permitted to cross at all. Therefore, if none other than a grade crossing is reasonable, that is to say, just, fair and equitable to both parties, the court will permit such mode of crossing, although it might be practicable, so far as mechanical conditions are concerned, to cross in some other way. For whatever injury to property is sustained by the older company, just compensation should be awarded in any proceeding to appropri-

ate a right-of-way across its line.    But it is not the policy of the law, while seeking to protect the just rights of the companies and protect property and persons from unnecessary injury, to place insurmountable obstacles in the way of improved means of conveyance or transportation.    It is the benefit which flows to the public from such better transportation which justifies the exercise of the right of eminent domain in behalf of private corporations.

It is unquestionably the policy of our state, as indicated by the legislation of which the acts already referred to form a part, to protect lives and property as far as it can practically and reasonably be done, and without prohibitive interference with lawful and beneficent enterprises, by preventing crossings at grade. With the qualifications stated, the requirement of the statute is mandatory.    It is urged in behalf of the plaintiff company that, in view of the construction placed upon the prior enactment of the state of Pennsylvania by the courts of that state, the phrase "reasonable and practicable" embodied in the Ohio law will not bear the interpretation which I have given to it.    We are not informed, other than by the general similarity of phraseology and the fact that the Pennsylvania statute was enacted many years before that of Ohio, that the one is a copy of the other; but, assuming it to be so—and it is highly probable that the claim of counsel in that respect is correct—we think that the very fact that the copy departs from the original in the respect to which reference has been made, is a fact of importance as suggesting the intention of our Legislature.    If the framers of our statute had before them that of Pennsylvania, it is manifest that either by inadvertence or designedly, the term "reasonably practicable" was not adopted.    In the Pennsylvania statute the word "practicable" is qualified by the adverb "reasonably"; not so in the Ohio enactment, but two qualifications are made to the direction to the court to prevent a grade crossing by its process; the one is, when it is not practicable to avoid such crossing, and the other, when it is not reasonable.

It is not an unfamiliar principle of statutory construction, and one which appeals to our common intelligence, that where one act is copied or amended with any material change of phrase-

ology, the inference is to be drawn that the change was intended. The case of *Bloom* v. *Richards,* 2 O. S., 388-402, is an instance. Judge Thurman in that case used these words, ''It is a general presumption that every word in a statute was inserted for some purpose''; and again, ''When a considerable change is made in the phraseology of a former law, the inference is reasonable that a change of meaning was also intended.''

Referring again to this argument of counsel for plaintiff, that the adoption of the Pennsylvania statute carries with it the construction placed upon that statute by the Pennsylvania court, we are cited to a long line of cases, beginning with the 77 Pa. St., 172-184, *Pittsburgh & C. R. R. Co.* v. *S. W. Pa. Ry. Co.,* and including 207 Pa. St., 406, *B. & O. R. R. Co.* v. *Butler Ry. Co.* Two of the cases cited, *R. R. Co.* v. *R. R. Co.,* 203 Pa. St., 176, and 207 Pa. St., 406, *supra,* were decided by the Supreme Court of Pennsylvania after the enactment of our statute, and, manifestly, can not have been adopted by our Legislature. It is, however, clear that the tendency of the Pennsylvania court from its first expression in application of the statute of that state to the present time, has been to enforce more and more strictly the mandatory requirements of the statute. In the earliest of the cases cited it was said, in substance, that it was the policy of the law to discourage grade crossings; in the 150 Pa. St., 193, 194, *Perry Co. R. R. Co.* v. *R. R. Co.,* that courts should prevent such crossings, except in case of manifest imperative necessity; in the 198 Pa. St., 1, *R. R. Co.* v. *Lawrence County,* that they should do so except in cases of ''unavoidable necessity''; but whatever may have been the construction placed upon the act from time to time, it was always based upon the phraseology peculiar to the Pennsylvania statute and adopted only in part by our own.

Another use has been made of this argument by counsel for the plaintiff, to-wit, that by following the Pennsylvania legislation in our statute under consideration, the principles enunciated in *Railway* v. *Railway,* 30 O. S., *supra,* have been abandoned. It is said, and correctly, that the act as to crossings does not leave the two companies on an equality as to rights; that the senior road is preferred to the junior; but we think that this is so only in the manner and to the extent already stated. The

easement first acquired by the plaintiff is as much a qualified title as it was before the act of 1902.

The importance of this fact is apparent when we consider the emphasis placed by counsel for plaintiff in error upon their claim that at the time when the Terminal Company instituted its proceedings for the appropriation of a right to cross, the plaintiff had in contemplation certain plans of development and use of its property which will be substantially destroyed by permitting a grade crossing. It is claimed that this may not legally be done, and some reliance is placed upon the Pennsylvania decisions, including *Railroad Co.* v. *Railroad Co.*, 203 Pa. St., 176. A reference to that decision discloses the fact that it was argued in the Supreme Court on May 5, 1902, five days before the enactment of the Ohio law, but the decision of the court as announced in the opinion of one of its judges on page 182, bears date May 19, 1902, nine days after the passage of the Ohio statute. The case may be useful as a precedent, but it is not authoritative and would not be followed in any conflict with the principles established in our own court. We are not clear that it is necessarily so in conflict. It is to be read in connection with the other cases decided by that court and in construction of the Pennsylvania statute.

The evidence submitted to us on the trial of this case has impressed us with the view that inquiries of this character might more wisely be left to the determination of a body of expert engineers, as has been done in some of the states. The case is one of great importance and of great difficulty. It has become manifest that either to permit or to prevent a crossing at grade will be attended with much inconvenience and financial loss to one or the other of these companies. We may, however, form some idea as to the extent of such inconvenience and loss to the plaintiff company by a crossing at grade from the fact that such a crossing has now been maintained for a period of about four years. In obedience to another Ohio statute, an interlocking device has been established and maintained, with the result that up to the present time no collisions have occurred between trains of the two companies. A witness whose duty calls him to continuous observation of the passage of engines and trains at the point

of crossing, testifies that there has been but very slight interference with the movements of such engines and trains of the plaintiff company; that ordinarily in the operation of the interlocker, tracks of the plaintiff company are kept free for the passage of its trains. That there has been some inconvenience and delay, there can be no doubt, but has it been of such a character and extent as to justify the imposing upon the defendant company the burden of an overhead crossing? It is conceded that the crossing must be either at grade or above. The ruling or maximum grade of the defendant company is sixty-five hundredths of one per cent., and while the amendatory statute of 1904 can not be applicable to the present proceedings as a governing factor, they may suggest what in the judgment of the Legislature might be a reasonable requirement in a crossing company under the original law. To construct an overhead crossing at the grade mentioned would entail an expense, as claimed by the defendant company, of upwards of $240,000. The estimate of experts called by the plaintiff is considerably lower, but the precise amount is not important; it suffices that, upon either estimate, the expense would be very great. The defendant contends that a crossing at any higher grade would not only be unreasonable, in view of other difficulties to be encountered, but would be impracticable. Experts for the plaintiff have suggested a construction of a one and one-half per cent. grade at an estimated cost of $76,000 and no cheaper plan has been proposed by either side. Several substantial objections are made to a 1½ per cent. grade by counsel for the defendant. They are in part as follows:

That it is a grade known as a "momentum grade," requiring for the passage of heavy trains over it a speed of at least twenty-six miles an hour, while the engines used by the Terminal Company have a maximum speed of only twenty miles an hour. These engines can not go faster, with safety, and engines of a different character would be unsuitable to the requirements of the defendant's business. The terminal is a belt line, engaged in the work of transferring trains to and from various railroads entering the city of Toledo, and taking and delivering freight at various industrial plants along its line. To require an

entire change of its motive power would, it is claimed, interfere with the purposes of the company to a far greater extent than interference would be or has been caused to the plaintiff company by the crossing at grade.   In response to a suggestion that the necessity for high speed to overcome such grade might be obviated by the use of a pusher-engine, evidence is offered that the maintenance of one such engine at the. crossing would involve an expense of $60 for every twenty-four hours, an aggregate of more than $20,000 a year.

Various other difficulties are suggested, which I will not enumerate, in the way of the adoption of this suggested grade of 1½ per cent.   We have concluded, in view of all the circumstances before us, that while the consummation of the plan might be within the bounds of feasibility, the expense of its construction and maintenance and the hazard and inconvenience attendant upon its use, coupled with the dangers which might arise from the suggested speed at street crossings, and possible municipal regulations as to such speed, all render the adoption of the plan one that it would be unreasonable to require.

As to the other plan—or a 65 per cent. grade—we think that the great cost may fairly be taken into account.   In nearly all of the Pennsylvania cases cited the element of expense received consideration from the court, and wherever a crossing at grade was prevented the action of the court seems to have been based partly upon the fact that the expense was moderate.   In this connection it should not be overlooked that our original statute contains no provision for an equitable apportionment of the expense between the two companies.   If the crossing should involve a cost of from $200,000 to $240,000, the plaintiff would, unquestionably, insist that it should be entirely borne by the defendant.   I have already quoted language from the case in 188 Pa. St., *supra,* which might be used to sustain such contention.   The adoption of a 65 per cent. grade—which is the highest grade conceded by defendant to be feasible—would necessitate a change of the established grade of certain streets of the city of Toledo and would, it is claimed, cut off convenient access to industrial plants, to the great injury of defendant's business. Upon this point, as upon the other, it would not be profitable to go into a review of the evidence.

We are of the opinion that although this statute can by its terms be invoked only by one of the corporations interested, one of the purposes of the statute was to conserve and protect the interests of the public. Grade crossings, in the interest of safety, are to be avoided if it is reasonable and practicable so to do, but considering the uses made of these tracks by both companies, the results of their long experience with the interlocking device, the comparatively slight interruption of the trains of either, the expense and other difficulties attendant upon the construction of any suggested overhead crossing, we are unanimously of the opinion that the case is not one requiring the preventive application of the statute. We feel that to require an overhead crossing is not so imperatively demanded in the interest of public safety as to justify the placing of this heavy burden on the defendant. The public has an interest in the continued prosperity and development of the enterprises inaugurated by both companies, and the court should not adopt a harsh construction of the law and application of the evidence resulting in seriously affecting such prosperity and development. Any operation of a railroad is attended with some danger to persons engaged in such operation and others, but in spite of such danger, in view of the great benefits derived by the public, the enterprises are fostered and encouraged. It is our judgment that the petition of the plaintiff be dismissed.